J-S22022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| YASIN SHARIF KENNEDY | |
| Appellant | No. 1365 MDA 2013 |

Appeal from the Judgment of Sentence December 13, 2011
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0000304-2011
CP-35-CR-0000306-2011
CP-35-CR-0003242-2010

BEFORE:  PANELLA, J., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY PANELLA, J.               **FILED APRIL 09, 2015**

Yasin Sharif Kennedy ("Kennedy") appeals from the judgment of sentence entered on December 13, 2011, following his convictions of numerous crimes, including, of relevance to this appeal, theft by deception, conspiracy and criminal use of a communication facility.[1]  We affirm the convictions, but vacate the judgment of sentence and remand for re-sentencing.

Kennedy's convictions are the result of efforts by the Pennsylvania Attorney General's Office and the Office of the District Attorney of Lackawanna County.  These agencies were operating separate narcotics

---

[1] 18 Pa.C.S.A. §§ 3922(a)(1), 903, 7512(a).

investigations in Scranton, Pennsylvania in 2010. Both of these agencies used a confidential informant ("CI") to engage in multiple drug transactions with Kennedy between July and November 2010, when Kennedy was arrested. The CIs consented to the interception of telephone calls with Kennedy and his companion, Allateef White ("L.A."), to arrange the purchase of increasing quantities of heroin. The CIs also wore wires when meeting with Kennedy.

The District Attorney's investigation began in August 2010 and involved three transactions. On August 10, 2010, the District Attorney's CI called Jessica Peoples ("Peoples") to ask about buying ten bags of heroin. Peoples handed the phone to L.A., and they agreed to a price of $130. N.T., 9/13/11, at 30-32. When the CI went to Peoples' house for the transaction, both L.A. and Kennedy were present, but L.A. conducted the sale. N.T., 9/14/11, at 136-37. Two days later, the CI arranged to buy fifty bags, or a "brick," of heroin from Kennedy and L.A. *Id*. at 139. The transaction again occurred at Peoples' house. *Id*. at 140. In this instance, the CI arrived at Peoples' house first, and L.A. and Kennedy later arrived at the residence together. Again, L.A. conducted the transaction and Kennedy was present. *Id*. at 141-42. On September 17, 2010, the CI spoke with Kennedy a number of times on the phone to arrange to purchase another brick of heroin for $300. *Id*. Kennedy told the CI to meet him in a particular location at a certain time. *Id*. As the CI and an undercover police officer waited in

the CI's car, Kennedy approached and entered the car. *Id*. at 148. As they drove around, Kennedy gave the heroin to the CI; however, Kennedy produced only forty-four bags of heroin instead of the agreed-upon amount of fifty bags. *Id*. at 148-49. Kennedy took the CI's money and promised to return with more heroin to make up the difference, but he never returned. *Id*. at 149-50.

The Attorney General's investigation also began in August 2010 but it involved five transactions. On August 31, 2010, the Attorney General's CI made multiple calls to Kennedy to arrange to buy two bricks of heroin for $700. *Id*. at 9-11. When Kennedy, who lived outside of the county, arrived in Scranton, he called the CI and arranged to meet him at a particular convenience store. As the CI waited for Kennedy, Kennedy called and told the CI to drive to a different location. Kennedy exited a vehicle being driven by an unidentified woman, entered the CI's car, and conducted the drug transaction.[2] *Id*. at 12-14. On September 10, 2010, after another series of phone calls, the CI arranged to buy three bricks of heroin from Kennedy for $1050. *Id*. at 30-31. On that date, Kennedy and L.A. picked up the CI and conducted the sale in their vehicle. In this instance, L.A. conducted the transaction with the CI while Kennedy drove the vehicle. *Id*. at 31-35. During this transaction, Kennedy proposed that if the CI would buy five

---

[2] At trial, the Commonwealth played a recording of this, and other conversations, between this CI and Kennedy to the jury.

bricks, he would "front" him an additional five bricks, which the CI could then sell and pay for later. N.T., 9/13/11, at 198. The CI discussed this possibility with Kennedy in several phone calls, and on September 27, 2010, the parties agreed to meet for this "five and five" deal. *Id*. at 201. On this date, Kennedy and L.A. arrived together. They instructed the CI to walk down the street. *Id*. When the CI was in a secluded area, Kennedy approached him on foot and gave him a quantity of loose heroin in a cigarette pack.[3] *Id*. Pursuant to their consignment agreement, the CI paid $1750 for this heroin, which was supposed to weigh roughly ten grams. *Id*. The quantity of heroin was not the promised amount, so the CI and Kennedy eventually agreed that Kennedy would provide the amount that was missing from this transaction and try another "five and five" deal. *Id*. at 202-05.

The parties met again on October 14, 2010. Leading up to that meeting, the CI spoke with Kennedy a number of times over the phone to arrange the deal. *Id*. at 206. Again, the parties met in an alley on foot. *Id*. at 206-07. The CI gave Kennedy $1750 and Kennedy gave the CI a bag of a loose heroin. *Id*. at 207. While the quantity provided was larger than the last time, it was not the entire amount the parties agreed upon, and additionally, the substance was not heroin, but a counterfeit substance. *Id*. at 208; N.T., 9/14/11, at 49. When later confronted over the phone,

---

[3] In all prior transactions, the heroin in each brick was divided into fifty bags. N.T., 9/13/11, at 201.

Kennedy told the CI that he gave him an imposter substance because he thought that the CI was working with the police. N.T., 9/13/11, at 208. The CI and Kennedy agreed to meet on November 3, 2010, so that the CI could buy another five bricks of heroin for $1750 and Kennedy could give the CI everything that was owed to him from the previous transactions. *Id.* at 210. In preparation for that meeting, the CI made a number of phone calls to Kennedy and L.A. *Id.* at 209-10. On that date, Kennedy entered the CI's vehicle, took the CI's money and left. *Id.* at 210. Shortly thereafter, the police stopped Kennedy and L.A. as they entered the Pennsylvania Turnpike. N.T., 9/13/11, at 56. As the officers approached the vehicle, they observed L.A. in the driver's seat and Kennedy in the passenger's seat. All of the pre-recorded currency given to Kennedy that day, less fifty dollars, was recovered from Kennedy's right shoe.[4] *Id.* at 57-60. After being placed under arrest, Kennedy admitted to one of the arresting officers that the reason he was in Scranton was to "rip off" the CI because he suspected the CI was working with the police. N.T., 9/14/11, at 166.

Kennedy was subsequently charged with numerous crimes, including not only the crimes listed in the first paragraph of this decision, but also multiple violations of the Controlled Substance, Drug, Device and Cosmetic

---

[4] Another pre-recorded twenty dollar bill used that day was later found in the interior of the vehicle. N.T., 9/14/11, at 167.

Act.  The charges were filed in three separate criminal informations.[5]  As a

result of a motion filed by the Commonwealth, all charges were joined for

trial.

At the conclusion of a two-day jury trial, Kennedy was found guilty of

theft by deception, theft by unlawful taking, fleeing or attempting to elude

police officers, possession of drug paraphernalia, and multiple counts of

criminal use of a communication facility, conspiracy, possession of a

controlled substance, possession of a controlled substance with the intent to

deliver, and delivery of a controlled substance.  On December 13, 2011, the

trial court sentenced him to an aggregate term of 186 to 372 months of

imprisonment, to be followed by fifteen years of special probation.  Kennedy

did not file post-sentence motions.

On January 5, 2012, Kennedy filed a timely notice of appeal.  The trial

court ordered Kennedy to file a statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b), and he complied.  The trial court did not file

an opinion in response thereto, and on May 20, 2014, this Court entered a

judgment order directing the trial court to file an opinion addressing the

issues Kennedy raised in his Pa.R.A.P. 1925(b).  On October 24, 2014, the

_____

[5]  The charges arising from the events of November 3, 2010 were filed at 10
CR 3242.  Charges relating to the other transactions that occurred as part of
the Attorney General's investigation were filed at 11 CR 304, and charges
related to the District Attorney's investigation were filed at 11 CR 306.

trial court complied with our order. Accordingly, we now proceed review the issues presented by Kennedy.

Kennedy has raised the following three issues on appeal:

1. Whether the Commonwealth presented insufficient evidence to establish the grading of [t]heft by [d]eception, [c]riminal [c]onspiracy – [t]heft by [d]eception, and [c]riminal [u]se of a [c]ommunication [f]acility as felonies of the third degree when the Commonwealth failed to prove sufficient valuation to substantiate a felony grading?

2. Whether there was insufficient evidence to support a charge of [c]riminal [u]se of a [c]ommunication [f]acility, as this offense requires intent to commit a crime graded as a felony when the underlying offense does not meet the statutory requirement?

3. Whether the trial court abused its discretion by allowing docket number 2010 CR 3242, docket number 2011 CR 304, and docket number 2011 CR 306 to be joined for trial?

Appellant's Brief at 4.

Kennedy's first issue challenges the sufficiency of the evidence supporting his convictions of theft by deception and conspiracy to commit theft by deception.[6]  "In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense."  ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super. 2013)

_____

[6] These charges were filed specifically with regard to Kennedy's theft of $1750 from the CI on November 3, 2010.  ***See*** Information, Criminal Action No. 2010 CR 3242, 1/11/11.

- 7 -

(quoting **Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011)). When performing this review, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." **Id**.

Kennedy argues that in order to be convicted of felony theft by deception, the Commonwealth was required to establish that the amount involved in the theft was at least $2000. It is Kennedy's position that the Commonwealth failed to do so, and therefore, he asks that his conviction for theft by deception and conspiracy to commit theft by deception be vacated. Appellant's Brief at 8-9.

In its Rule 1925(a) opinion, the trial court agrees with Kennedy that the Commonwealth failed to present sufficient evidence to establish that the value involved in the theft was at least $2000; however, the trial court concludes that the convictions are sound, as the value of the goods implicated only the grading of the offense for sentencing purposes. It asks that we affirm the convictions and remand solely for resentencing on the theft by deception and conspiracy of theft by deception convictions. Trial Court Opinion, 10/24/14, at 15-16.

Kennedy was charged with, and convicted of, theft by deception under 18 Pa.C.S.A. § 3922(a)(1). This statute provides that,

> [a] person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind;

but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S.A. § 3922(a)(1).  Thus, contrary to Kennedy's apparent position, there is no threshold value requirement that must be met for a conviction of theft by deception.  Furthermore, our review of the evidence of record, in the light most favorable to the Commonwealth, reveals sufficient evidence to establish that Kennedy committed this offense. *See*, *e.g.*, N.T., 9/3/11, at 210; N.T., 9/14/11, at 166.

However, Section 3903 of the Crimes Code governs the grading of theft offenses.  It provides, in relevant part, as follows:

**(a) Felony of the second degree.**--Theft constitutes a felony of the second degree if:

(1) The offense is committed during a manmade disaster, a natural disaster or a war-caused disaster and constitutes a violation of section 3921 (relating to theft by unlawful taking or disposition), 3925 (relating to receiving stolen property), 3928 (relating to unauthorized use of automobiles and other vehicles) or 3929 (relating to retail theft).

(2) The property stolen is a firearm.

(3) In the case of theft by receiving stolen property, the property received, retained or disposed of is a firearm.

(4) The property stolen is any amount of anhydrous ammonia.

(5) The amount involved is $100,000 or more but less than $500,000.

**(a.1) Felony of the third degree.**--Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by

receiving stolen property, if the receiver is in the business of buying or selling stolen property.

(a.2) Felony of the first degree.-- Except as provided in subsections (a) and (a.1), theft constitutes a felony of the first degree if:

(1) in the case of theft by receiving stolen property, the property received, retained or disposed of is a firearm and the receiver is in the business of buying or selling stolen property; or

(2) the amount involved is $500,000 or more.

**(b) Other grades**.--Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:

(1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or

(2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

18 Pa.C.S.A. § 3903(a),(b).  Thus, we agree with the trial court that the value of the item or items stolen during a theft is relevant only insofar as the grading of the crime for sentencing purposes.  As discussed above, the Commonwealth established that Kennedy stole cash in the amount of only $1750, and therefore that his theft by deception conviction and related conspiracy conviction could only be graded as first-degree misdemeanors.[7] 18 Pa.C.S.A. § 3903(b).  Accordingly, the trial court erred as matter of law by grading these offenses as felonies for sentencing purposes.

---

[7] Conspiracy is graded the same as the most serious offense that is an object of the conspiracy.  18 Pa.C.S.A. § 905(a).

In his second issue, Kennedy attacks his conviction of criminal use of a communication facility at 10 CR 3242, which we again note involved only the events of November 3, 2010. He argues that there was insufficient evidence to support his conviction because to be found guilty of this crime, the Commonwealth had to prove that he committed or attempted to commit a felony. It is Kennedy's position that because the theft by deception and related conspiracy charge were not felonies, this conviction cannot stand. Appellant's Brief at 9-10. We disagree.

Criminal use of a communication facility is defined as follows:

**(a) Offense defined**.--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S.A. § 7512(a).

To establish evidence sufficient to convict a person of criminal use of communication facility, "the Commonwealth must prove beyond a reasonable doubt that: (1) [the accused] knowingly and intentionally used a communication facility; (2) [the accused] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." *Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004); *see also Commonwealth v. Rose*, 960 A.2d 149 (Pa. Super. 2008) ("Under the plain language of the statute, one essential element of the crime

is that the person must use the communication facility to bring about a *felony*.") (emphasis in the original).

The evidence, when viewed in the light most favorable to the Commonwealth, establishes that Kennedy used a telephone to arrange to meet the CI on November 3, 2010 with the promise to sell the CI a certain amount of heroin. N.T., 9/13/11, at 208-10. On that day, Kennedy met with the CI, took the CI's money, and left. N.T., 9/13/11, at 210; N.T., 9/14/11, at 52. After waiting for a period of time, the CI came to believe that Kennedy was not returning and informed the agent with whom he was working of this belief. N.T., 9/13/11, at 210; N.T., 9/14/11, at 52. Shortly thereafter, the police stopped Kennedy's vehicle as it entered the Pennsylvania Turnpike. N.T., 9/14/11, at 56. Following his arrest, Kennedy stated that he was trying to "rip off" the CI because he believed the CI was working with the authorities. *Id.* at 166.

We agree with the trial court that Kennedy "took a substantial step towards completing the drug transaction." Trial Court Opinion, 10/24/14, at 19. Kennedy spoke with the CI over the phone to set up a heroin buy. Kennedy later entered the CI's vehicle, took the money, and left— presumably to procure the heroin. When the police subsequently stopped Kennedy he stated that he met with the CI to "rip" him "off." N.T., 9/14/11, at 166. That is merely nothing more than *Kennedy's claim*. The jury did not

believe him. The evidence, which the jury obviously credited, shows that Kennedy took a substantial step towards completing the drug transaction.[8]

In his final issue, Kennedy argues that the trial court erred by granting the Commonwealth's motion to join all charges for trial. "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." ***Commonwealth v. Wholaver***, 989 A.2d 883, 898 (Pa. 2010).

Pennsylvania Rule of Criminal Procedure 582 governs the joinder of indictments or informations for trial. In pertinent part, it provides:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

(2) Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Pa.R.Crim.P. 582(A).

---

[8] Kennedy was also charged with, and convicted of, criminal use of a communication facility in connection with the Attorney General's investigation. ***See*** Amended Information, Criminal Action No. 11 CR 0304, 9/7/11. Kennedy does not challenge this conviction on appeal.

When considering whether to allow crimes charged in separate informations to be tried together, "[t]he court must determine [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses." *Commonwealth v. Kunkle*, 79 A.3d 1173, 1190 (Pa. Super. 2013) (quoting *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988)).

In this case, the trial court found the first prong satisfied upon its determination that evidence of each offense would be admissible in separate trials because they "were so intertwined into a common scheme or plan that proof of one tended to prove the other." Trial Court Opinion, 10/24/14, at 26. Generally, evidence of bad acts is inadmissible to prove that a defendant acted in conformity with those acts or to demonstrate a propensity to commit crimes. *Commonwealth v. Brown*, 52 A.3d 320, 325 (Pa. Super. 2012). "However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Id.* (citing Pa.R.E. 404(b)(2)).[9] "Therefore, evidence of other crimes or acts

---

[9] This rule provides, in relevant part, as follows:
*(Footnote Continued Next Page)*

may be admitted if such evidence proves a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others." ***Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa. Super. 2006). "The degree of similarity is an important factor in determining the admissibility of other crimes or bad acts under this exception." ***Id.***

The evidence of the individual transactions as recounted above establishes a common pattern or scheme used by Kennedy to purportedly sell heroin. For each transaction, Kennedy would speak with the CI over the phone to discuss the quantity of heroin the CI wanted, the price the CI would pay, and the location for the transaction. Kennedy would travel to Scranton in the company of another person. Moments before the transaction, Kennedy would change the previously agreed-upon location.

*(Footnote Continued)* ─────────────

> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

Once a relationship was established, Kennedy would fail to deliver the agreed-upon amount of heroin, take the CI's money while promising to get more, and never return. Because the CIs had highly similar experiences with Kennedy, we find no error in the trial court's determination that evidence as to one undercover operation would have been admissible in a separate trial for the other, as it established a common scheme or plan on Kennedy's part, *i.e.*, the manner in which he conducted his drug trade. **See Commonwealth v. Boyle**, 733 A.2d 633, 636-37 (Pa. Super. 1999) (finding that testimony regarding the manner in which defendant arranged prices, quantities, and locations for sales of narcotics on multiple occasions admissible to establish defendant's common scheme for selling narcotics).

The second prong of the **Kunkle** test requires us to consider whether the evidence was capable of separation such that the jury would not be confused. The trial court concluded that,

> the jury was able to separate the evidence pertaining to each drug transaction because the [CIs] were different, no eyewitnesses overlapped, and different investigating officers testified. The testimony of each investigating officer involved a limited number of actors and essentially the same conduct, which provided a pattern of facts not complex to the jury. Each drug transaction took place on a specific date, involved a different [CI], and distinct amounts of physical evidence.

Trial Court Opinion, 10/24/14, at 28. The trial court's description is accurate: the evidence establishes that the offenses took place in different locations, on different dates, and with different people. Accordingly, we agree with the trial court that the jury was capable of separating the

evidence. *See Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997) (holding that "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence").

Having found no abuse of discretion in the trial court's determination as to the first two prongs of this test, we consider whether it abused its discretion in concluding that Kennedy would not be unduly prejudiced by the joinder of the informations for trial. *See Kunkle*, 79 A.3d at 1190. In the context of joinder of indictments or informations for trial, our focus is on the possibility of three distinct types of prejudice:

> (1) the defendant may be embarrassed or confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to others; (2) the jury may use evidence of the additional crimes to infer criminal disposition, and find guilt on the basis of this inference; or (3) the jury may cumulate evidence of the various crimes to find guilt, when it would not so find had it considered the evidence of each offense separately. Accordingly, the interest of judicial economy served by consolidating informations must be weighed against these possibilities of prejudice in determining the propriety of consolidation.

*Commonwealth v. Boyd*, 461 A.2d 1294, 1299 (Pa. Super. 1983).

Kennedy argues that he was prejudiced because "[i]n consolidating these matters, the Commonwealth was allowed to infer and impute to the jury that [Kennedy] had a propensity [to] commit crime, which made a fair trial impossible." Appellant's Brief at 14. We disagree. This case is analogous to *Boyle*, in which the defendant sold narcotics to undercover

agents on five separate occasions over a period of approximately one month. The charges arising out of those transactions were filed in two criminal informations, which were joined for trial by motion of the Commonwealth. On appeal, the defendant also argued that allowing the charges to be tried together prejudiced him by unfairly demonstrating a propensity to commit crimes. This Court rejected that argument, noting that any prejudice caused by evidence of the defendant's participation in serial drug transactions was caused by the defendant himself. We concluded that because the defendant created the sequence of events, he "cannot fairly now demand that the … matters be severed and tried in separate trials." *Boyle*, 733 A.2d at 638 (Pa. Super. 1999) (quoting *Commonwealth v. Lark*, 543 A.2d 491, 499 (Pa. 1988)). Kennedy is not entitled to relief on this claim.

In summary, we affirm the convictions, but find that the trial court erred by grading Kennedy's theft by deception and related conspiracy convictions as felonies. This finding has upset the sentencing scheme, requiring us to vacate the judgment of sentence in its entirety and remand for re-sentencing. *See Commonwealth v. Phillips*, 946 A.2d 103, 115 (Pa. Super. 2008) ("Where we determine that a sentence must be corrected, this Court has the option of amending the sentence directly or remanding it to the trial court for re-sentencing. If a correction by this Court may upset the sentencing scheme envisioned by the trial court, the better practice is to remand.").

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Mundy joins the memorandum.

Judge Donohue files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/2015