COMMONWEALTH of Pennsylvania,
Appellee,

v.

Thomas BOYLE, Appellant.

Superior Court of Pennsylvania.

Submitted March 8, 1999.
Filed June 9, 1999.

Ellen C. Schurdak, Asst. Public Defender, Stroudsburg, for appellant.

Bernard A. Anderson, Asst. Dist. Atty., Stroudsburg, for Com., appellee.

Before ORIE MELVIN, SCHILLER and HESTER, JJ.

SCHILLER, J.:

¶ 1 Appellant, Thomas Boyle, appeals the judgment of sentence entered in the Court of Common Pleas of Monroe County on July 31, 1998. We affirm.

FACTS:

¶ 2 In October 1997, based on information that Appellant trafficked in drugs, the Monroe County Drug Task Force initiated an undercover investigation. From October 16, 1997 until November 18, 1997, undercover agents with the assistance of a paid confidential informant, bought cocaine from Appellant on five different occasions. On January 22, 1998, Appellant was arrested and charged with 5 counts of delivery of a controlled substance,[1] and related offenses including intentional possession of a controlled substance [2] and possession with intent to deliver.[3] Appellant waived a preliminary hearing and on March 16, 1998 was arraigned on the cases at criminal informations Nos. 81–1998 and 170–1998.[4] The case was placed on the Criminal Trial List for May 5, 1998. On May 4, 1998, the

---

1. 35 P.S. §. 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

3. 35 P.S. § 780–113(a)(30).

4. Due to an error of the District Attorney's office, Appellant was only arraigned on four charges. Subsequently, the trial court denied the Commonwealth's motion to amend the criminal information to include the fifth transaction. Information No. 81–1998 included the cocaine sales of October 16, 1997 and November 5, 1997, whereas Information No. 170–1998 included the sales of November 8, 1997 and November 18, 1997.

Commonwealth moved to join the two cases pursuant to Pa.R.Crim.P. 1127; Appellant then moved to sever. The trial court, however, denied Appellant's motion to sever the cases.

¶ 3 On May 13, 1998, after a two-day jury trial, Appellant was found guilty on all counts. The Commonwealth gave notice that it would seek sentencing enhancements noting that the drug convictions arose from separate transactions. On June 23, 1998, Appellant was sentenced to a term of incarceration of not less than nine (9) nor more than eighteen (18) years. Appellant filed a motion for new trial and for reconsideration of sentence. The former was denied but on July 31, 1998, the trial court modified Appellant's sentence to a prison term of not less than five (5) years and not more than ten (10) years. Appellant timely appeals.

DISCUSSION:

¶ 4 Appellant raises the following two issues on appeal: 1) whether the trial court committed reversible error in joining Appellant's two cases; and 2) whether the trial court committed reversible error in denying Appellant's written request for a missing witness and an egregious police conduct jury instruction?

■ ¶ 5 The determination of whether separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Newman*, 528 Pa. 393, 398, 598 A.2d 275, 277 (1991). Here Appellant argues that the trial court's grant of the motion for joinder prejudiced him because the jury heard evidence relating to four drug transactions rather than two bolstering the Commonwealth's theory that Appellant was an entrenched drug trafficker. He also claims that his repeated drug buys may not be joined because they were not part of one, continuous criminal episode, and the Commonwealth did not argue, nor does the

evidence support, any other exception to joinder.

¶ 6 Rules of Criminal Procedure 1127 and 1128 establish the substantive standards for joinder and severance of offenses and defendants, and state in pertinent part:

### Rule 1127. Joinder–Trial of Separate Indictments or Informations

A. Standards

1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; ...

. . . .

### Rule 1128. Severance of Offenses or Defendants

The court may order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 1127; Pa.R.Crim.P. 1128. The Pennsylvania Supreme Court recently reiterated the appropriate three-part test under these rules:

... the court must ... determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (quoting *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 496–97 (1988)).

¶ 7 We turn then to a determination of whether the evidence of each of Appel-

lant's offenses was admissible in a separate trial for the other. It is well-settled that [e]vidence of distinct crimes are [sic] not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. *Commonwealth v. Banks*, 513 Pa. 318, 349, 521 A.2d 1 (1987); *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981). However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). . . .

[T]he general rule prohibiting the admission of evidence of prior crimes nevertheless

allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Morris, supra* at 493 Pa. 175, 425 A.2d 715. . . .

*Commonwealth v. Buchanan*, 456 Pa.Super. 95, 689 A.2d 930, 932, *appeal denied*, 548 Pa. 678, 699 A.2d 733 (1997) (quoting *Commonwealth v. Lark*, 518 Pa. 290, 302–04, 543 A.2d 491, 497 (1988)). Three more exceptions to the general rule of exclusion of prior crimes have evolved: "[ ]to impeach the credibility of a defendant who testifies in his trial; [in] situations where [a] defendant's prior criminal history had been used by him to threaten or intimidate the victim; [and in] situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called 'res gestae' exception)." *Commonwealth v. Billa*, 521 Pa. 168, 177, 555 A.2d 835, 840 (1989).

¶ 8 At trial, the supervisory police officer, a member of the Monroe Country Drug Task Force, testified to the planning and organization of each of the four drug buys and to his observations of each while on surveillance. The undercover detective then testified to the three buys he made with the CI and the other which he observed. N.T., 5/13/98, at 11–40. He said that at the first buy Appellant had a quantity of both powder and rock cocaine. The undercover agent bought a small amount and Appellant could not give him change but indicated he would give it to him *the next time*. The agent confirmed he would be back for more. N.T., 5/13/98, at 20, 22. He also testified that at the second meeting, Appellant advised him that if he needed more, he could call again. N.T., 5/13/98, at 22, 29. Appellant also took the stand and admitted that "[o]n four occasions I got cocaine for someone who wanted it," and that he was paid. N.T., 5/13/98, at 712. However, he denied that he sold drugs regularly for profit, and claimed that he did so on these four occasions simply to support his drug habit. N.T., 5/13/98, at 60, 62–63, 64, 67.

¶ 9 As is evident, Appellant's identity, motive and intent were not at issue at trial, nor was Appellant claiming mistake. Appellant's theory was that he was not part of a regular scheme of drug trafficking and that he was entrapped by law enforcement. However, the testimony revealed a common scheme in which a deal for a specified dollar amount of powder cocaine was set up by the CI using Appellant's coded page number and waiting for Appellant to call back. A meeting place was set to which the CI and the undercover agent drove in an unmarked vehicle and waited for Appellant, who on each occasion, working with a

group of co-conspirators, quickly obtained the amount of cocaine. Appellant then delivered the drug to the CI or the undercover agent and was paid in cash. These multiple drug deliveries were clearly related and revealed a common plan through which Appellant could and did obtain and deliver cocaine whenever money was offered.[5]

¶ 10 Thus, evidence of the details of Appellant's involvement in one transaction tends not to prove Appellant's propensity to commit crimes, but rather the likelihood that he was actively involved in each related transaction. *Buchanan, supra.* Moreover, testimony about Appellant's offer during the second transaction to get the undercover agent more cocaine in the future would have been admissible at a separate trial for the later transactions. *See Commonwealth v. Taylor,* 299 Pa.Super. 113, 445 A.2d 174 (1982) (holding evidence of prior discussions admissible at trial for later drug transaction to show how criminal activity was arranged). Finally, if Appellant took the stand in each case, the evidence of other similar transactions would clearly be admissible to impeach his credibility. Thus, we agree with the trial court which denied the motion to sever finding that "each delivery possessed a common scheme" and "the evidence of one set of drug deliveries would have been admissible at separate trials for each other." Trial Court Opinion, 7/31/98, at 3.

¶ 11 We also find that the second prong of the severance inquiry whether the evidence was capable of separation sufficient to avoid confusing the jury must be answered affirmatively. Here the evidence supporting the illegal drug deliveries was established by two police officers, one of whom was the participating undercover agent. Their testimony involved a limited number of actors and essentially the same conduct, and provided a pattern of facts to the jury which was not complex. Thus, there was no risk of confusing the jury.

¶ 12 We turn then to a determination of whether Appellant was prejudiced by the consolidation of these offenses. *Commonwealth v. Collins, supra.* Prejudice, when severance is the issue,

> [i]s not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which Rule 1128 speaks is rather that which would occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

*Commonwealth v. Lark, supra* at 499.[6] As the record shows, the first of these drug deliveries was set up on the basis of information that Appellant was engaged in trafficking drugs in Monroe County but subse-

---

5. As previously stated, Appellant's defense at trial was that he didn't intend to traffic in drugs to make a profit but only to support his own addiction. However, this Court has stated: "Section 780-113(a)(30) does not require that a party make a profit, it simply prohibits 'delivery.' Delivery is defined as 'the actual, constructive or attempted transfer from one person to another of a controlled substance....' 35 P.S. § 780-102." *Commonwealth v. Morrow,* 437 Pa.Super. 584, 650 A.2d 907, 912 (1994), *appeal denied,* 540 Pa. 648, 659 A.2d 986 (1995).

6. This Court has also identified three specific types of prejudice which may inure to an Appellant when tried at one trial for several offenses: (1) the defendant may be embarrassed in presenting defenses, as where his defense to one charge is inconsistent with his defenses to others; (2) the jury may use evidence of the additional crimes to infer criminal disposition, and find guilt on the basis of this inference; or (3) the jury may cumulate evidence of the various crimes to find guilt, when it would not so find had it considered the evidence of each offense separately. *Commonwealth v. Boyd,* 315 Pa.Super. 308, 461 A.2d 1294, 1299 (1983). These concerns are inapplicable in the instant case where Appellant had only one defense theory to the four crimes to which he admitted guilt.

quent deals were initiated by Appellant himself. At the first meeting Appellant came with a significant quantity of powder cocaine; he made clear that he could provide powder or rock cocaine; and when he couldn't give the undercover officer appropriate change he told the agent he would make it up next time. Appellant never indicated any reluctance to deliver drugs and did so every time within hours. In sum, he caused the prejudice.

■ ¶ 13 As was said in *Lark, supra,* "[appellant] created the sequence of events and cannot fairly now demand that the . . . matters be severed and tried in separate trials." This is particularly so where Appellant admitted to using a network to obtain cocaine and to selling it repeatedly to two individuals. The incidental fact that he is an addict has no bearing on the argument that it is prejudicial to try him on all charges together. Indeed, given the evidence that Appellant had an established mode of selling drugs, failure to join his charges for trial would unfairly hinder the Commonwealth in its fight against this plague. Notice is past due to those whose business is purveying drugs in our communities that they are accountable for their conduct. Attempting to cloak this business under the guise of isolated incidents offends common sense while demeaning the perilous efforts of narcotics officers who pursue these predators. Thus, the trial court did not abuse its discretion in granting the Commonwealth's motion to join the offenses in a single trial.

¶ 14 Appellant next avers that the trial court's denial of two requested jury instructions – a missing witness instruction and an egregious police conduct instruction denied him a fair trial. With regard to the former, Appellant claims the absence of the confidential informant's testimony prejudiced him because the CI would have testified that he was hesitant to provide the requested drugs thereby bolstering an entrapment defense. Similarly, he argues that without the egregious police conduct instruction, he could not pursue his theory

that law enforcement did not arrest him after one drug transaction in order to manipulate the mandatory drug sentencing laws for multiple offenses.

■ ¶ 15 The missing witness adverse inference rule has been summarized as follows:

When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

*Commonwealth v. Manigault,* 501 Pa. 506, 510–11, 462 A.2d 239, 241 (1983)(quotations, citations and emphasis omitted). This Court has delineated the circumstances which preclude issuance of the instruction.

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Evans,* 444 Pa.Super. 545, 664 A.2d 570, 573–74 (1995). To invoke the missing witness instruction against the Commonwealth, the witness must only be available to the Commonwealth and no other exceptions must ap-

ply. *Commonwealth v. Culmer*, 413 Pa.Super. 203, 604 A.2d 1090, 1098 (1992).

■ ¶ 16 Appellant argues that none of these exceptions applies. The record belies this assertion. First, Appellant's acknowledgement that the CI was a life-long friend highlights that he knew the missing witness' identity and could have called him to testify. N.T., 5/13/98, at 61–62. Second, the CI's testimony would have been cumulative to, and less reliable than, the testimony of the undercover officer who testified to the three sales Appellant made to him and to witnessing the fourth transaction. Finally, the Commonwealth posited a satisfactory explanation for the non-production of the witness. Specifically, the CI was still cooperating with the authorities in ongoing drug investigations, and his safety was at issue. N.T., 5/12/98, at 32–33, 58–59. *See Commonwealth v. Jones*, 432 Pa.Super. 97, 637 A.2d 1001 (1994). Appellant's argument is, therefore, meritless and the trial court did not err in denying the missing witness jury instruction.

■ ¶ 17 Appellant also claims the trial court committed reversible error when it denied the following jury instruction derived by counsel from *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714 (1995), *appeal denied*, 544 Pa. 605, 674 A.2d 1069 (1996) and *Commonwealth v. Matthews*, 347 Pa.Super. 320, 500 A.2d 853 (1985):

> If the jury finds that the undercover law enforcement officials were involved in the alleged criminal activity to such a degree that it can be termed outrageous, the jury must then conclude that the defendant's Federal and State due process rights were violated and that the defendant is innocent of the charges. (citations omitted)

Motion for Binding Instructions and Defendant's Points for Charge, 5/15/98. The relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case.

*Commonwealth v. Mays*, 450 Pa.Super. 188, 675 A.2d 724, 729, *appeal denied*, 546 Pa. 677, 686 A.2d 1309 (1996). If the instruction proffered is inapplicable and improper, the court should not charge on it. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 999 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993).

■ ¶ 18 To rise to the level of outrageous conduct and implicate a defendant's due process rights

> generally requires 'proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity.' *United States v. Duvall*, 846 F.2d 966, 973 (5th Cir.1988) quoting *United States v. Nations*, 764 F.2d 1073, 1077 (5th Cir.1985). Moreover, for due process to bar a conviction, the government's involvement in the commission of the crime 'must be *malum in se* or amount to the engineering and direction of the criminal enterprise from beginning to end.' (citations omitted).

*Commonwealth v. Nelson, supra* at 718. There simply was no evidence in this case that approximated this standard. As the trial court aptly observed, "[i]f the police conduct in this case was so egregious, then the police would have to stop immediately all undercover operations in drug cases." Trial Court Opinion, 7/31/98, at 5. Moreover, in Pennsylvania, "[t]he question whether government conduct [has been] so outrageous as to constitute a violation of due process is a question of law to be determined by the court, not the jury." *Nelson, supra* (quoting *United States v. Engler*, 806 F.2d 425, 430 (3d. Cir.1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987)). The requested jury instruction was both inapplicable and improper and the trial court did not err in failing to provide a jury instruction on egregious police conduct to the jury.

CONCLUSION:

¶ 19 There was no manifest abuse of the trial court's discretion in joining for

trial the two informations covering Appellant's four drug transactions. Furthermore, Appellant's contentions that the trial court erred in denying two requested jury instructions are meritless.

¶ 20 Accordingly, we affirm the judgment of sentence of the Court of Common Pleas of Monroe County dated July 31, 1998.