J-S65012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVON L. SMITH | |
| Appellant | No. 1717 WDA 2015 |

Appeal from the Judgment of Sentence September 14, 2015
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001619-2014

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 06, 2016**

Davon L. Smith appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County.  After careful review, we affirm.

The trial court made the following factual findings:

> Patrolman William T. Hanelly, Jr. testified that on June 7, 2014 he responded to a call at which he met Adamec Stevens and John McConnell.  Adamec Stevens identified himself as the victim.  He had blood coming out of his mouth and bruises on his face.  He was being treated by emergency medical providers.  Mr. Stevens indicated that a man named 'Flip' had assaulted him.  Patrolman Hanelly identified Davon Smith as 'Flip.'

---

[*] Retired Senior Judge assigned to the Superior Court.

Adamec Stevens testified that on June 7, 2014 he was at the Monkey Wharf bar in Altoona. He glanced up at a camera in the bar and saw a dispute going on outside. Someone ran into the bar asking for help. Mr. Stevens testified that 'Flip' and his girlfriend were involved in the dispute. Mr. Stevens went outside to try to help break up the dispute. The individual Mr. Stevens knew as 'Flip' left and returned a short time later and began hitting Mr. Stevens. Mr. Stevens testified he felt that his assailant was hitting him with something harder than just his fists.

Mr. Stevens further testified that after the assault 'Flip,' later identified as Mr. Smith, asked him to tell the District attorney that he had pulled a knife on him at the time of the assault. He asked Mr. Stevens for his cell phone number and Mr. Stevens gave him a made up number. After that, several acquaintances approached Mr. Stevens and told him that 'Flip' knew it was a fake number and he 'was done for.'

Patrolman Ryan Caputo obtained video surveillance from the Monkey Wharf bar that showed the incident. The video shows Mr. Stevens attempting to mediate an altercation between a female named Whitney and Mr. Smith. Mr. Smith leaves the area for approximately two and a half minutes. He then returns and punches the victim twice before the victim falls into a white car and then to the ground. Mr. Smith continues to punch Mr. Stevens while he is on the ground and kicks him in the head.

Mr. Smith described the activities shown on the surveillance video. He indicated that Mr. Stevens challenged him while they were outside so he went back into the bar. He testified that his wife's friend came in and told him to come back outside because Mr. Stevens' friend was arguing with Mr. Smith's wife. Mr. Smith testified that he went back outside and called a cab. From where he was standing he could see Mr. Stevens touch his wife. Mr. Smith testified that he thought Mr. Stevens had a knife and

> Mr. Smith had just been stabbed so he was a little more aggressive than he would have been otherwise.

Trial Court Opinion, 1/13/2016, at 2-6.

Smith was charged with one count of aggravated assault[1], one count of simple assault[2] and one count of harassment.[3] On August 6, 2015, a jury found Smith guilty of all three counts. The Honorable Elizabeth A. Doyle sentenced Smith to 10 to 20 years' incarceration for count 1 and merged counts 2 and 3 into count 1 for purposes of sentencing. Smith filed a motion to reconsider his sentence on September 22, 2015, and Judge Doyle denied his post-sentence motion on September 28, 2015. Smith then filed a timely notice of appeal on October 28, 2015. On October 29, 2015, the trial court directed Smith to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Judge Doyle filed her Rule 1925(a) opinion on January 13, 2016.

Smith raises the following issues on appeal:

1. Whether the trial court erred by overruling Appellant's hearsay objection at trial where the evidence at trial tended to show that the statements were inadmissible hearsay under Pa.R.E. 801 which did not fall under any exceptions to the hearsay rule to permit its admission.

2. Whether the trial court erred by refusing to give Suggested Standard Jury Instruction 9.502, Justification: use of

---

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. § 2701(a)(1).

[3] 18 Pa.C.S. § 2709(a)(1).

force/deadly force in defense of others, where the evidence at trial tended to show that Appellant justifiably believed that the use of force was immediately necessary for the protection of his wife, Whitney Smith.

Appellant's Brief, at 4.

In his first issue, Smith contends that the trial court abused its discretion when it admitted Stevens' testimony that six acquaintances of Smith approached Stevens in the Blair County Jail and said that "[Smith] had found out that it's a false number and that [Stevens] was done for." N.T. Trial, 8/5/15, at 78. [4] While the Commonwealth maintains Stevens' testimony was admissible under the co-conspirator exception to the hearsay rule, *see* Pa.R.E. 803(25)(e),[5] Smith argues that the testimony is inadmissible under the hearsay exception because the Commonwealth failed to present sufficient evidence that a conspiracy existed. Appellant's Brief, at 9. Smith also suggests that the "Commonwealth failed to provide a reason for the unavailability of the 'acquaintances.'" *Id*. at 18.

_____

[4] "Our standard of review relative to the admission of evidence is for an abuse of discretion." *Commonwealth v. Feliciano*, 67 A.3d 19, 27 (Pa. Super. 2013).

[5] A statement offered against an opposing party that was made by the party's co-conspirator during and in furtherance of the conspiracy is not hearsay. The statement may be considered but does not by itself establish the existence of the conspiracy or participation in the conspiracy. This rule applies regardless of whether the declarant is available as a witness. *See* Pa.R.E. 803(25)(e).

"Only slight evidence of the conspiracy is needed for a co-conspirator's statement to be introduced and the order of proof is discretionary."

*Feliciano*, 67 A.3d at 27. To prove a criminal conspiracy,

> [t]he Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.
>
> Additionally, an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa. Super. 2005).

> Hearsay statements made by a co-conspirator are allowed to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of a conspiracy. This exception applies even where no party has been formally charged with conspiracy. Nor need the co-conspirator, whose declaration is testified to, be on trial. To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy existed between declarant and the person against whom the evidence is offered, and (2) that the statement sought to be admitted was made during the course of the conspiracy.

**Commonwealth v. Basile**, 458 A.2d. 587, 590 (Pa. Super. 1983).

The Commonwealth presented sufficient circumstantial evidence that a conspiracy existed to intimidate Stevens.[6] Stevens testified that Smith "asked [Stevens] to contact the District Attorney to let them know that [Stevens] pulled a knife on [Smith] that night and that's why [Smith] hit [Stevens]." N.T. Trial, 8/5/15, at 74. Stevens also testified that Smith asked Stevens for his cell phone number, and Stevens gave Smith a fake number. *Id*. at 74.

The trial court found that "circumstantially, there must have been at least a conversation between the 'acquaintances' and Smith indicating that Stevens had given Smith a fake number. The fact that six different acquaintances approached Stevens is circumstantial evidence of Smith's determination to convey a threat to Stevens." Trial Court Opinion, 1/13/16, 14-15. The Commonwealth presented testimonial evidence that Smith approached Stevens about lying to the District Attorney and asked for Stevens' phone number. This testimony, considered with Stevens' testimony that multiple individuals approached Stevens to both threaten him and tell him that Smith knew about the fake number, is sufficient to prove that

---

[6] The Commonwealth argues that the "confrontation and subsequent threat [that] Mr. Stevens was 'done for' clearly fits the description of retaliation and/or intimidation of a witness and required [Smith's] knowledge the number was fake." Appellee's Brief, at 7; 18 Pa.C.S. § 4952; 18 Pa.C.S. § 4953.

Stevens conspired with more than one individual to intimidate Smith. *See Feliciano*, *supra*. The acquaintances would not have known about the fake number unless Smith had a conversation with the acquaintances about the fake number.[7]

With regard to Smith's second issue, he argues that the trial court erred by refusing to give the standard jury instruction on the use of deadly force in defense of others.[8] According to the trial court, the court "declined to give the instruction based on the totality of the testimony. Smith's testimony indicated that he and the victim had a previous altercation and that he became increasingly agitated because he thought that Stevens was getting in his wife's face." Trial Court Opinion, 1/13/16, at 15-16.

_____

[7] Additionally, the out-of-court statement does not implicate the Confrontation Clause because the statement had a strong indicia of reliability. The acquaintances had no reason to lie to Stevens about the fake number or the threat. *See Commonwealth v. Coccioletti*, 425 A.2d 387, 391 (Pa. 1981) (confrontation clause not violated whenever declarations had strong 'indicia of reliability'); *see also Dutton v. Evans*, 400 U.S. 74, 89 (1970).

[8] Pa.S.S.J.I. § 9.502; *see also* 18 Pa.C.S. § 506 ("The use of force upon or toward the person of another is justifiable to protect a third person when: (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and (3) the actor believes that his intervention is necessary for the protection of such other person.").

This Court has stated: "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Baker**, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citations omitted), *appeal granted on other grounds*, 35 A.3d 3 (Pa. 2012). Further, we must determine "whether such charge was warranted by the evidence in the case." **Commonwealth v. Boyle**, 733 A.2d 633, 639 (1999). Additionally, "it has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1257 (Pa. Super. 2014).

According to Smith, he believed Stevens provoked him and was "touching on [Smith's] wife." N.T. Trial, 12/18/15, at 62. The only evidence presented suggesting that Smith was defending his wife, however, was Smith's testimony. Testimony from Patrolman Ryan Caputo of the Altoona Police Department, the video surveillance evidence obtained from the Monkey Wharf Bar, as well as testimony from Whitney Smith, Smith's wife, overwhelmingly corroborated the victim's account of the events as they transpired on June 6, 2014 and June 7, 2014. **See** Appellee's Brief, at 11-12. The evidence presented did not support a jury instruction on the use of deadly force in defense of others, and therefore, we find no abuse of discretion.

Judgment of sentence affirmed.

PLATT, J., joins the memorandum.

OLSON, J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016