J-S86006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LISA BASINGER | : | |
| Appellant | : | No. 1666 WDA 2015 |

Appeal from the Judgment of Sentence August 12, 2015
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000173-2014

BEFORE: GANTMAN, P.J., MOULTON, J., STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 06, 2017**

Appellant Lisa Basinger appeals from the judgment of sentence entered by the Court of Common Pleas of Greene County after a jury convicted Appellant of harassment and disorderly conduct.[1] Appellant claims there was insufficient evidence to support her convictions and argues that the trial court should have granted a mistrial or a curative instruction based on the prosecutor's improper comment in closing argument. We affirm.

Appellant was originally charged with burglary, criminal trespass, harassment (graded as a third degree misdemeanor), harassment (graded as a summary offense), and disorderly conduct. On May 20, 2015, the trial court conducted Appellant's jury trial in which the following testimony was

---

[1] 18 Pa.C.S. § 2709(a)(4) (misdemeanor), 18 Pa.C.S. § 5503(a)(1) (summary offense), respectively.

*Former Justice specially assigned to the Superior Court.

presented. In the evening hours of June 12, 2014, Appellant went to retrieve her estranged husband's truck from the home of her husband's paramour, Krista Bedilion. After entering the home without knocking on the front door, Appellant encountered Krista's daughter, sixteen-year-old Paige Bedilion, and began to yell profanities at her. Paige testified that Appellant called her an "F'ing B" and "all kinds of other derogatory names for females." N.T. Trial, 5/20/15, at 51. The Bedilions' Rotweiler, Shaya, pushed against Appellant in an attempt to prevent her from progressing further into the home. Appellant threatened that if Paige would not take the dog away, Appellant would kill the dog.

When Krista entered the room, Appellant began repeating the profanities. Paige testified that Appellant did not seem very focused, but was "cussing at everyone in the room." N.T. at 52. In addition, Paige indicated that Appellant lunged at her, perhaps in attempt to scare her. Thereafter, Paige indicated that her mom, Krista, pushed Appellant out the door and shut it. Paige then heard someone bang and kick the front door with force and listened as Appellant continued to scream. After Paige observed Appellant walk around the yard and fall down a few times, Paige saw another individual escort Appellant to a car, which left the scene. Krista called the police. Neither the Commonwealth nor the defense called Krista to testify at trial.

Appellant testified on her own behalf, stating that she went to Krista Bedilion's home, simply to retrieve her estranged husband's truck. Appellant

was accompanied by her son, Steven, and his friends, Elijah and Ryan. Appellant shared that she has Guillain-Barre disease, a neuromuscular and nerve condition that affects her ambulation.

After Appellant discovered that her husband's truck was blocked in by another vehicle, Elijah helped Appellant walk to the door of the Bedilion home. Appellant admitted to opening the door without knocking. Appellant admitted that when she initially saw Paige open the door, she mistakenly thought Paige was Krista Bedilion. Appellant asserted that she showed Paige the truck keys and said "I don't want any problems here, I just need that white car moved so that I can get that truck out of there, and I will be gone." N.T. at 125. Appellant asserted that Paige slammed the door in her face, causing Appellant to simply turn around and leave the premises. Appellant admitted to saying "I don't know why that F bitch slammed the door in my face, all I want is my truck." N.T. at 126. Appellant denied entering the home, screaming obscenities at Paige, or seeing a dog at the Bedilion residence. Appellant admitted that she had not been taking her prescribed Xanax at the time of this incident.

At the conclusion of the trial, the jury acquitted Appellant of burglary and criminal trespass, but convicted her of misdemeanor harassment of Paige Bedilion. As the parties had agreed that the trial court would resolve the summary charges, the trial court acquitted Appellant of summary harassment of Krista Bedilion but convicted Appellant of summary disorderly conduct. On August 12, 2015, the trial court sentenced Appellant to fifteen

days incarceration to be followed by forty-five days of house arrest to be followed by ten months probation. On August 21, 2016, Appellant filed a post-sentence motion, which the trial court denied on October 9, 2015. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

[1.] Does an angry profane outburst of "fucking bitch" or other unspecified profanity, made by a separated wife blocked from retrieving her truck, said to her husband's paramour in the presence of the paramour's 16-year-old child at the doorstep of the paramour's house, after the wife asks them to move the car that blocks the truck, constitute a crime of harassment committed with intent to harass, annoy, or alarm another by communication of lewd, lasvicious, or obscene words in violation of 18 Pa.C.S. 2709(a)(4)?

[2.] Did the trial court err in failing to grant a mistrial or corrective instructions when the prosecuting attorney informed jurors at closing argument that she did not call the eyewitness's mother because she would have testified exactly like her daughter?

Appellant's Brief at 11.

First, we will address Appellant's challenge to the sufficiency of the evidence supporting her harassment conviction. Our standard of review is as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every

element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Rodriguez**, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting **Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa.Super. 2012)).

In this case, the jury convicted Appellant of misdemeanor harassment under Subsection 2709(a)(4) of the Crimes Code which provides that "[a] person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person … communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S. § 2709(a)(4).

While Appellant admits calling Paige Bedilion a "fucking bitch," Appellant argues that this comment does not warrant a harassment conviction as she did not communicate "lewd, lascivious, or obscene" words. In support of her assertion that the word "fuck" is not obscenity, Appellant cites to **Commonwealth v. Fenton**, 750 A.2d 863 (Pa.Super. 2000), in which this Court vacated Fenton's conviction of harassment by communication conviction as it concluded that Fenton's threat to "shoot the fucking head off" a Congressman and his aide did not constitute a "lewd,

lascivious, or indecent" comment within the meaning of the then-applicable harassment statute in 18 Pa.C.S. § 5504.

However, this Court's decision in **Fenton** is distinguishable from this case. In **Fenton**, the defendant was charged with harassment by communication under 18 Pa.C.S. § 5504, which was subsequently repealed. The applicable language of Section 5504 stated that an individual could be convicted of harassment by communication if with intent to harass another, he "addresses to or about such other person any *lewd, lascivious or indecent words or language.*" 18 Pa.C.S. § 5504(a) (emphasis added) (repealed). The **Fenton** Court noted that the words "lewd, lascivious, or indecent" only pertain to "matters of a sexual and salacious nature." **Fenton**, 750 A.2d at 866. As a result, this Court reversed Fenton's harassment conviction as it found that Fenton's use of the "F word" to describe the heads of the people he threatened to shoot did not constitute harassing language of a sexual nature as required by Section 5504. **Id**.

However, the Legislature has since repealed Section 5504 and enacted the current harassment statute in Section 2709, which broadens the scope of the crime to include communication beyond inappropriate sexual comments. The statutory language now allows for a harassment conviction when an individual "with intent to harass, annoy or alarm another … communicates to or about such other person any **lewd, lascivious, threatening or obscene words, language, drawings or caricatures**." 18 Pa.C.S. § 2709(a)(4) (emphasis added). In **Commonwealth v. Hartzell**,

988 A.2d 141, 144 (Pa.Super. 2009), this Court affirmed the appellant's harassment conviction under Section 2709 when the appellant exited his home, began yelling obscenities at the victims, and fired his weapon at the victims.

Viewing the record in this case in a light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence to support Appellant's harassment conviction under Section 2709(a)(4). Appellant went to the home of her estranged husband's paramour, Krista Bedilion, to take back her husband's truck. She entered the Bedilion home without permission and encountered Paige Bedilion, a sixteen-year old child. Appellant shouted profanities at Paige, threatened to kill her dog, and lunged at her. The totality of the circumstances permit the inference that Appellant shouted the profanity and made her threats with the intent to harass, annoy, or alarm the child victim. Accordingly, we find Appellant's sufficiency claim to be meritless.

Second, Appellant asserts that the trial court should have granted a mistrial when the prosecutor informed the jury that she did not call Krista Bedilion to testify as she would have testified exactly like her daughter, Paige. Appellant argues that this statement was prosecutorial misconduct as it bolstered the testimony of Paige Bedilion by claiming she testified consistently to what her mother, a missing witness, would have said. In addition, Appellant asserts that she was entitled to a "missing witness instruction that the failure of the prosecutor to call the eyewitness's mother

gives rise to the inference that the testimony would be favorable to the defendant whether in direct or cross-examination." Appellant's Brief, at 33. We disagree.

Our Supreme Court summarized the missing witness adverse inference as follows:

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

*Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa.Super. 1999) (quoting *Commonwealth v. Manigault*, 501 Pa. 506, 510-11, 462 A.2d 239, 241 (1983)). A defendant is not entitled to the missing witness instruction under the following circumstances:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Boyle*, 733 A.2d at 638 (quoting *Commonwealth v. Evans*, 444 Pa.Super. 545, 664 A.2d 570, 573-74 (1995)).

While Appellant claims she was entitled to a missing witness instruction, she does not assert that Krista's testimony was unavailable to the defense. *See Manigault*, 501 Pa. at 511, 462 A.2d at 241 (where record is devoid of any evidence that a witness was available only to Commonwealth, refusal to give missing witness charge not error). Thus, we find that Appellant has not shown she was entitled to the missing witness adverse inference.

Nevertheless, the trial court agreed to give a standard jury instruction related to the Commonwealth's failure to call Krista as a witness:

> There is a question about what weight, if any, you should give to the failure of the Commonwealth to call Krista Bedilion as a witness. If, however, three factors are present and there is no satisfactory explanation for a party's failure to call a potential witness, the jury is allowed to draw a common sense inference that her testimony would have been unfavorable to that party, and the three necessary factors are first, that the person is available to that party only and not the other; second, it appears the person has special information material to the issue, and third, the person's testimony would not merely be cumulative.
>
> Therefore, if you find these three factors present and there is no satisfactory explanation for the Commonwealth's failure to call Krista Bedilion to testify, you may infer if you choose to do so that her testimony would have been unfavorable to the Commonwealth.

N.T. at 212.

Moreover, the trial court issued the following curative instruction to address the prosecutor's assertion that Krista's testimony would have been cumulative:

> It is for the jury to decide credibility with regard to what is testified from the witness stand, and it is not for anyone else but the jury to determine credibility. You should not decide the case either based on which side presents the greater number of witnesses or greater amount of evidence. Instead, you must decide which witnesses to believe and which evidence to accept on the basis of whether that testimony or evidence is credible.

N.T. at 208.

With these two instructions, we find that the law was clearly, adequately and accurately presented to the jury for consideration. Accordingly, we conclude that the trial court did not err in denying Appellant's request for a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/6/2017