J-S51030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEON AKIL HALL | : | |
| | : | |
| Appellant | : | No. 956 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 6, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001041-2018

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: JANUARY 4, 2021**

Leon Akil Hall appeals from the judgment of sentence entered on his convictions for two counts of Driving under Influence of Alcohol or Controlled Substance ("DUI"), one count for general impairment and the other for highest rate of alcohol,[1] and Driving While Operating Privilege Is Suspended or Revoked.[2] Hall argues that the trial court improperly gave a missing witness instruction. We affirm.

The trial court summarized the testimony at trial as follows:

> Steven Wicks was called as the first witness. Mr. Wicks testified that on the night of December 17, 2017, he heard a loud crash outside his residence and went outside to investigate. There, Mr. Wicks saw that a vehicle had crashed into one of his cars, which was parked by the curb in front of Mr. Wicks' house. The force of the collision rammed the

---

[1] 75 Pa.C.S.A. § 3802(a)(1) and (c), respectively.

[2] 75 Pa.C.S.A. § 1543(a).

car forward, causing it to crash into the back of Mr. Wicks' other parked car. Mr. Wicks then called 911. Mr. Wicks testified that he did not see any individuals exit the vehicle that caused the collision. However, he testified that after arriving at the scene of the accident he saw [Hall] and another individual standing in the driveway of a house further down the street, whispering to each other. He testified that this other individual, whom he could not clearly see but identified as male, left the scene of the accident before police arrived. Mr. Wicks testified that while he was waiting outside for police to arrive he spoke to [Hall], who admitted the he was the driver of the vehicle that caused the crash. [Hall] told Mr. Wicks that he had been going Christmas shopping and was driving his daughter's car. However, Mr. Wicks testified that he did not live near any shopping areas.

Officer Salisbury, the [o]fficer who was dispatched to the scene of the accident, next testified. Officer Salisbury stated that once he arrived at the scene, he spoke with [Hall], who admitted that he was the driver of the vehicle that caused the crash. [Hall] told Officer Salisbury that he had caused the accident when he swerved to miss a parked van at the other side of the street. [Hall] later elaborated that he was taking the corner too fast and was distracted while talking on the phone when he realized that he was about to hit the parked van and swerved. Officer Salisbury had [Hall] perform a field sobriety test, which indicated that [Hall] was intoxicated. Officer Salisbury then transported Defendant to Williamsport Hospital after he consented to a chemical blood test. The blood test demonstrated that [Hall] had a blood alcohol level of .231%, well above the .08% legal limit for driving.

When asked whether Mr. Wicks had informed him that another individual had fled the scene of the accident, Officer Salisbury stated that he was not sure. The [c]ourt permitted entry of a short video. In the video, Mr. Wicks informed Officer Salisbury of the individual who had left the scene of the accident, although Mr. Wicks told Officer Salisbury that he did not know whether that individual was associated with [Hall] or was involved in the accident. Officer Salisbury testified that he did not follow-up on this information by questioning [Hall] about the other individual because [Hall] admitted to being the driver and he believed [Hall] would

have independently provided that he was not the driver if that were true.

Tonisha Grimes, [Hall's] friend, was next called as a witness. Ms. Grimes testified that she and [Hall] were at a party thrown by a mutual friend on the night of December 17, 2017. She testified that because [Hall] appeared too intoxicated to walk home, she lent the keys to her car to a mutual friend of theirs named Mike, who was not drinking, so he could drive Defendant home. She testified that she saw Mike get into the driver's seat of her car and [Hall] in the passenger's seat as they left the party. Ms. Grimes testified that she did not accompany the two after they left, instead returning to the party.

[Hall] appeared as a witness on his own behalf. He testified that on the night of December 17, 2017, he was at a party thrown by his friend Sharif. He stated that about thirty people attended the party, including his friends Nate and Ms. Grimes. He stated Mike was also at the party. He described Mike as an acquaintance, someone he played basketball with, and stated that he and Mike were mutual friends with the group throwing the party. He testified that he did not know Mike's last name. [Hall] testified that Mike was driving at the time of the accident and then fled the scene. [Hall] testified that he did not specifically remember if he told Mr. Wicks and Officer Salisbury that he was driving the vehicle, due to his high level of intoxication at the time of the accident.

Trial Ct. Op., filed 3/25/20, at 1-3 (footnotes omitted).

At the close of testimony, the Commonwealth moved to have the trial court give a missing witness instruction regarding "Mike." Hall objected and the trial court overruled the objection concluding that the testimony during trial rendered a missing witness instruction appropriate. **See** N.T., Trial, 11/1/19, at 86-87. The court stated that while "Mike" was available to Hall, he was not available to the Commonwealth:

- 3 -

> This person, Mike, as [Hall] testified, is a person known to
> him but obviously not in any way known to the
> Commonwealth. And then for that reason, the [c]ourt finds
> that the jury could find that he is uniquely available only to
> the defense and that his failure to call Mike as a witness
> could be viewed as – they could infer that Mike's failure to
> appear is because he would have offered testimony
> [un]favorable to [Hall].

*Id.* at 87.

The trial court then gave the following missing witness instruction:

> There is a question about what weight, if any, you should
> give the failure of [Hall] to call Mike as a witness. If three
> factors are present and there is no satisfactory explanation
> for a party's failure to call a potential witness, the jury is
> allowed to draw a common sense [sic] inference that his
> testimony would have been unfavorable to that party.
>
> The three necessary factors are, first, that the person is
> available to that party only and not to the other party.
> Second, it appears the person has special information
> material to the issue. And, third, that the person's testimony
> would not be merely cumulative.
>
> Therefore, if you find these three factors present and there
> is no satisfactory explanation for [Hall's] failure to call Mike
> to testify, you may infer, if you choose to do so, that his
> testimony would have been unfavorable to [Hall].

*Id.* at 106-107.

The jury returned guilty verdicts on both counts of DUI and the trial court found Hall guilty of Driving While Operating Privilege Is Suspended or Revoked. *See* Verdict Slip, filed 11/1/19; Order, filed 11/5/19. The trial court sentenced Hall to 16 months to 5 years' incarceration and imposed fines. *See* Order, filed 1/13/20. Hall filed a post-sentence motion, again challenging the

missing witness instruction. The trial court denied the motion and this timely appeal followed.

Hall reiterates his missing witness argument before this Court: "Did the lower court abuse its discretion by including the missing witness jury instruction without proof that the witness was 'peculiarly available' to [Hall] and not available to the Commonwealth?" Hall's Br. at 6.

Our standard of review when examining jury instructions "'is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.'" ***Commonwealth v. Bradley***, 232 A.3d 747, 759 (Pa.Super. 2020) (quoting ***Commonwealth v. Chambers***, 980 A.2d 35, 50 (Pa. 2009)). A missing witness jury instruction is proper in limited circumstances. Such an instruction provides that "'[w]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.'" ***Commonwealth v. Miller***, 172 A.3d 632, 645 (Pa.Super. 2017) (quoting ***Commonwealth v. Boyle***, 733 A.2d 633, 638 (Pa.Super. 1999)). The missing witness instruction is not appropriate in the following circumstances:

> 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Id.* at 645–46 (quoting ***Boyle***, 733 A.2d at 638).

In the instant case, Hall argues that the missing witness instruction was inappropriate because "Mike was not particularly within his control." Hall's Br. at 11. He argues that "while [Hall] had an edge in attempting to locate Mike – knowing people in common – . . . that this does not put Mike 'peculiarly within [his] control.'" *Id.* Hall also argues that "Mike's truthful testimony would have been favorable, but submits that Mike's interests are hostile to [Hall's] desire for his testimony." *Id.* at 12. Additionally, he maintains that "[t]hrough Officer Salisbury, the Commonwealth had immediate notice of a second individual fleeing the crime scene" but the Commonwealth did not seek out that individual. *Id.* at 11.

The trial court rejected Hall's argument, noting that Hall did not mention Mike during his encounter with police and had in fact admitted driving the vehicle at the time of the accident. ***See*** Trial Ct. Op. at 5. The court also pointed out that Hall's own testimony demonstrated that Mike was available

to him. *Id.* Hall testified that Mike was an acquaintance of his with whom he played basketball and that the night of the accident they both attended the same party with mutual friends.

The trial court did not abuse its discretion in giving the missing witness jury instruction. Despite Hall's claim that Mike was not solely available to him, the evidence showed otherwise. While Hall had means of contacting "Mike," the Commonwealth did not. Hall's own testimony demonstrated his links to "Mike," while nothing of record suggests any obvious way the Commonwealth could have located him. Hall's sole claim on appeal fails.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/04/2021