689 A.2d 930

**COMMONWEALTH of Pennsylvania**

v.

**William BUCHANAN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 10, 1996.

Filed Jan. 30, 1997.

Henry L. Borger, Warren, for appellant.

Robert Grossi, Assistant District Attorney, for Commonwealth, appellee.

Before McEWEN, P.J., and FORD ELLIOTT and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This appeal is from the order, entered by the Court of Common Pleas of Venango County on December 1, 1995, which denied appellant's petition for relief under the Post–Conviction Relief Act (PCRA).[1] We affirm.

In this case, the facts were adequately summarized in our memorandum decision which addressed appellant William Buchanan's direct appeal, as follows:

1. 42 Pa.C.S.A. § 9541 *et seq.*

[Appellant] (a.k.a. Mad Dog) used to be the president of the Oil City chapter of a motorcycle club called the Kingsmen.[ ] Early in the summer of 1992, Gaylord (a.k.a.Jake) Deeter assaulted Richard Gervasoni, one of [appellant's] fellow Kingsmen, down at Coulters [sic] Hole, a rural location in Rockland Township, Venango County. It became appellant's duty[,] as leader of the bikers' club[,] to arrange a payback. [Appellant] had to show Deeter, and the rest of Venango County, that nobody messed with the Kingsmen.

In June of 1992, appellant and Richard Drzewiecki (a.k.a. Bitchy Ritchie) approached Sam Ross (a.k.a. Hippie) at the Bikers' clubhouse in Oil City. The three stepped out to the parking lot, where appellant asked Ross if he "knew Deeter well enough to get him to a keg party somewhere." Ross perceived that Buchanan intended to lure Deeter back to Coulters [sic] Hole, where he would be forced to fight Gervasoni. Ross expressed his misgivings about the enterprise, but [appellant] warned him that "the wheels are already in progress," and if Ross didn't play his part, he would "get fucked up." [Appellant] provided Ross with his pickup truck to transport Deeter to the "party" at Coulters [sic] Hole.

Ross arrived with Deeter as directed, plus a few others who had come along to join in the ostensible beer fest. There, to Ross's [sic] surprise, lay in wait numerous Kingsmen, not just Gervasoni. The bikers took turns kicking Deeter, beating him with clubs and breaking his bones with large rocks. [Appellant] was absent, but Drzewiecki was present and joined Gervasoni in the melee. Deeter was seriously injured by the savage attack, but survived.

*Commonwealth v. Buchanan*, 438 Pa.Super. 692, 652 A.2d 406 (1994).

Following a jury trial, on June 21, 1993, appellant was convicted of conspiracy to commit aggravated assault,[2] solicitation to commit aggravated assault,[3] conspiracy to commit kid-

2. 18 Pa.C.S.A. §§ 903(a), 2702(a).

3. 18 Pa.C.S.A. §§ 902(a), 2702(a).

napping,[4] and solicitation to commit kidnapping.[5] Then, on December 28, 1993, appellant was sentenced, in aggregate, to a term of imprisonment of 78 to 156 months. Upon direct appeal, we affirmed appellant's judgment of sentence. *Buchanan, supra.* Next, appellant filed a PCRA petition which was denied by the lower court on December 1, 1995. This timely appeal follows.

On appeal, appellant claims that trial counsel was ineffective for failing to: (1) pursue exclusion of Ross's testimony concerning appellant's ordering of a prior assault on Ross based on a "prior bad acts" theory; (2) pursue exclusion of Ross's testimony regarding allegations of threats upon his life; and (3) examine witnesses on alleged contradictory evidence relating to the identification of the license plate on appellant's truck. We disagree.

Each of appellant's contentions allege ineffective assistance of counsel. The well-established three-pronged test for evaluating such claims is as follows:

> The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Pierce,* 515 Pa.

4. 18 Pa.C.S.A. §§ 903(a), 2901(a).
5. 18 Pa.C.S.A. §§ 902(a), 2901(a).

153, 527 A.2d 973 (1987). The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of trial is presumptively effective. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985).

*Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189, 194–195 (1994). Since appellant fails to meet the first prong of the ineffective assistance of counsel test on each of his three claims, his appeal must fail.

Appellant's first claim, that trial counsel was ineffective for failing to object to the portion of Ross's testimony concerning appellant's ordering the removal and assault of Ross, approximately two weeks before the beating of Deeter, as a "prior bad act," is without merit. Appellant argues that the evidence of appellant's ordering of the assault on Ross constituted evidence of a prior crime, showing that appellant was predisposed to criminal activity, which is inadmissible. *See Commonwealth v. Jones,* 499 Pa. 522, 454 A.2d 8, 11 (1982). Ross testified about an incident which occurred approximately two to three weeks prior to the assault and kidnapping of Deeter at Coulter's Hole. While a member of the Kingsmen was with a woman in the back room of the clubhouse on this occasion, Ross took the woman's change purse from her hand bag in the bar area of the clubhouse. N.T., 6/10/93 at 29. After alighting from the back room, the member and the woman immediately confronted Ross, who returned the purse. *Id.* A few days later, appellant asked Ross to step outside of the clubhouse with another Kingsman, Bitchy Richie. *Id.* at 30–31. Then, Ross's disputed testimony went as follows:

Q (PROSECUTING ATTORNEY): ... And what occurred when you got outside?

A (ROSS): He [appellant] confronted me and he asked me about—he said he heard I stole from a citizen [*i.e.,* a nonmember of the Kingsmen] in the clubhouse, and I said that I did. I was wearing a hat that said, "Support your local Kingsmen." He snatched that off my head. I believe he called me a fucking asshole. I'm not sure.

And he looked at Bitchy Ritchie and said, **"Do what you got to do"** and turned around and walked away.

Q: So [appellant] walked away?

A: Yes.

Q: Where did he go?

A: I believe he went back inside.

Q: And what did Bitchy Ritchie do?

A: He started asking me why I did what I did. And I said, "There is no justification for it. I was drunk. I stole the change purse." You know, there is no justification.

The next thing I know he hit me a couple times, and I went down, and then he put his knee in my ribs. He told me to get the fuck out of there and don't ever come back to the clubhouse again.

*Id.* at 31–32 (emphasis added).

Our Supreme Court has summarized the law on the admission of evidence of "prior bad acts" as follows:

> Evidence of distinct crimes are [sic] not admissible against a defendant being prosecuted for another crime *solely* to show his bad character and his propensity for committing criminal acts. *Commonwealth v. Banks*, 513 Pa. 318, 349, 521 A.2d 1 (1987); *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981). However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). As we [ ] stated in *Banks:*
>
> [T]he general rule prohibiting the admission of evidence of prior crimes nevertheless
>
> > allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between

the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Morris, supra* at 493 Pa. 175, 425 A.2d 715. This list of "special circumstances" is not exclusive, and this Court has demonstrated it will recognize additional exceptions to the general rule where the probative value of the evidence out-weighs the tendency to prejudice the jury. *Commonwealth v. Claypool, supra* (evidence of defendant's prior criminal activity is admissible where defendant makes statement about such activity in order to threaten and intimidate victim and where force or threat of force is element of crime for which defendant is being prosecuted).

513 Pa. at 350, 521 A.2d at 17. Another "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. *Commonwealth v. Murphy,* 346 Pa.Super. 438, 499 A.2d 1080, 1082 (1985), quoting *Commonwealth v. Williams,* 307 Pa. 134, 148, 160 A. 602, 607 (1932). This special circumstance, sometimes referred to as the "res gestae" exception to the general proscription against evidence of other crimes, is also known as the complete story rationale, *i.e.,* evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, *Evidence,* § 190 (1972 2d ed.); *Carter v. United States,* 549 F.2d 77 (8th Cir.1977); *U.S. v. Weeks,* 716 F.2d 830 (11th Cir.1983); *see also Commonwealth v. Coyle,* 415 Pa. 379, 389–91, 203 A.2d 782, 787 (1964) (evidence of other crimes admissible as these crimes were interwoven with crimes for which defendant was being prosecuted).

*Commonwealth v. Lark,* 518 Pa. 290, 302–304, 543 A.2d 491, 497 (1988); *Commonwealth v. Stiffler,* 441 Pa.Super. 377, 379–382, 657 A.2d 973, 975–976 (1995).

■ In the instant case, the evidence introduced, that appellant ordered the assault and exile of Ross by uttering the words "Do what you got to do" approximately two weeks before the kidnapping and aggravated assault of Deeter, was excepted from the general proscription against evidence of prior crimes because it was introduced to demonstrate Ross's motive to set up Deeter's beating and to develop the facts of the story in this case. After appellant ordered Bitchy Richie to assault Ross by saying these words, Bitchy Richie accordingly struck Ross and kicked him out of the clubhouse. N.T., 6/10/93 at 32. Nevertheless, a few days later, the vice president of the Kingsmen, Ted Snyder, indicated that Ross could return to the clubhouse if he "played it cool" and "minded [his] P's and Q's." *Id.* at 32–33. Hence, if Ross would do what the Kingsmen told him to do, he would, once again, be allowed to enter the Kingsmen's clubhouse. Then, a few days before the assault and kidnapping of Deeter, appellant approached Ross and asked him to set up Deeter for the beating by inviting him to a feigned keg party with the Kingsmen on that Saturday morning. *Id.* at 60–65. Thus, Ross's motive for setting up Deeter was to regain the favor of the Kingsmen, which he had lost because he betrayed them in stealing the purse of a girlfriend of one of their members, by completing a task. Accordingly, the Commonwealth introduced appellant's statement, ordering the assault and banishment from the clubhouse of Ross, into evidence because it was independently relevant to establish Ross's motive for setting up Deeter. Further, the statement was necessary to complete the story of appellant's soliciting and conspiring to assault and kidnap Deeter by "demonstrating the history and natural development of the facts." *Lark,* 518 Pa. at 304, 543 A.2d at 498. Consequently, appellant's statement was properly admissible. *Lark, supra; Stiffler, supra. See also Commonwealth v. Mayhue,* 536 Pa. 271, 297–301, 639 A.2d 421, 434–435 (1994) (holding evidence of the death of a "hitman," who accepted money to kill defendant's wife but failed to do so, admissible under the *res gestae* exception to the general proscription against evidence of prior criminal acts, where such piece of evidence "provided another piece of a puzzle which, once completed, revealed [defendant's

wife's] murder to be the culmination of a series of cold, calculating, and unrelenting attempts to bring about her demise"). Therefore, since the issue underlying appellant's first claim of ineffective assistance of counsel is meritless, such claim fails. *Pierce, supra.*

 Appellant's second contention, that trial counsel was ineffective for failing to object to the portions of Ross's testimony concerning allegations of threats made upon his life, is similarly without merit. Appellant argues that this testimony constituted inadmissible hearsay. Appellant's brief at 31–32. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. *Commonwealth v. Jones,* 530 Pa. 591, 614–616, 610 A.2d 931, 942 (1992); *Commonwealth v. Patosky,* 440 Pa.Super. 535, 547–549, 656 A.2d 499, 506, *alloc. denied,* 542 Pa. 664, 668 A.2d 1128 (1995). Statements offered for another purpose, however, such as showing the effect of threats upon the witness, are not hearsay and therefore are admissible. *Commonwealth v. Starks,* 298 Pa.Super. 213, 216–219, 444 A.2d 736, 738–739 (1982). Here, Ross testified that he requested, from the Commonwealth, protection and a non-state sentence, in return for his testimony. N.T., 6/10/93 at 14. Such requests were necessary because Ross testified that he received threats upon his life from the Kingsmen. *Id.* Further, in explaining his plea agreement, Ross testified that he could not work outside of jail "for safety reasons because there were rumors that [he] was being followed." *Id.* at 150.[6] Thus, the threats were not offered to prove the truth of the matter asserted, but rather to explain why Ross testified and accepted the plea agreement. Hence, appellant's statements demonstrated the effect of the threats upon him, and therefore were admissible. *Starks, supra.* Consequently, appellant's second claim of ineffectiveness fails as the argument which forms the basis of its assertion possesses no arguable merit. *Pierce, supra.*

6. Appellant also cites a third instance of where Ross testified about threats received (N.T. 6/10/93 at 150). Appellant's brief at 31. We are at a loss, however, to find any testimony on this page concerning threats made on Ross's life. Hence, we only address the aforementioned two instances of threats included in appellant's argument.

■ Appellant's third contention, that trial counsel was ineffective for failing to examine witnesses on alleged contradictory evidence regarding the identification of the license plate on appellant's truck, is devoid of merit. Appellant argues that because a victim of the assault and kidnapping, Deeter, testified that the truck which transported him to Coulter's Hole had a temporary license plate (*see* N.T., 6/8/93 at 71) while other witnesses who identified the same truck made no reference to such temporary plate, trial counsel was ineffective for not challenging such "contradiction" at trial. We disagree.

Deeter testified in great detail about the truck as follows:
Q (PROSECUTING ATTORNEY): What type of truck was this do you recall?
A (DEETER): It was an old beat-up truck. It had big holes in the bed. It had different colors. The bed was beat-up, and it had a wooden slab going up in the back where the cab meets the window part.

*Id.* at 6. Then, Jason Black, another victim of the assault, testified in further detail about the truck, corroborating Deeter's testimony about the truck's characteristics aside from the status of the license plate. *Id.* at 86–87. Moreover, he testified that a few days after the incident, he saw the truck again and wrote down the license number and related this information to the police. *Id.* at 101–102. Not coincidentally, this license number matched that of appellant's truck. *Id.* at 209. In addition, Wayne Hale, Samuel Ross and Angela Lamberton, other June 20, 1992, testified to similar descriptions of such truck. *Id.* at 157; N.T., 6/10/93 at 42; N.T., 6/11/93 at 168–169. Consequently, none of these witnesses testified as to the type of license, *i.e.*, permanent or temporary, on the truck which they observed. Therefore, as all other material descriptions of the truck were consistent between witnesses, no contradiction existed upon which trial counsel could pursue regarding the identification of the truck employed by the Kingsmen. As such, trial counsel cannot be held ineffective for failing to pursue a meritless claim, and appellant's final argument fails. *Durst, supra.*

For the foregoing reasons, we affirm the order denying appellant's PCRA petition.

ORDER AFFIRMED.