J-A09027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY ALLEN HESS, | |
| Appellant | No. 398 MDA 2016 |

Appeal from the Judgment of Sentence December 31, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004812-2014

BEFORE:  GANTMAN, P.J., SHOGAN and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:                           **FILED JULY 17, 2017**

Appellant, Gregory Allen Hess, appeals from the judgment of sentence entered following his convictions of criminal conspiracy to commit first-degree murder, criminal use of a communication facility, and criminal solicitation to commit first-degree murder.  We affirm.

The trial court summarized the procedural history of this case as follows:

> [Appellant] was separately charged with multiple offenses involving three different hire-to-kill plots against three different victims.  The series of hire-to-kill plots began with the allegation that [Appellant] hired Calvin Jones, Jr. ("Jones") to kill [Appellant's] wife's friend or paramour, Chris Ward.  [Appellant] was arrested on April 18, 2014, on charges of Criminal Solicitation to Commit First Degree Murder and Criminal Use of a Communication Facility.  This case was docketed at CP-67-CR-2961-2014.

After Jones turned police informant, [Appellant] was next charged with hiring Michael Crampton (a/k/a Mike Jones) ("Crampton"), a fellow York County Prison inmate, to kill Jones. [Appellant] was again arrested on June 11, 2014 and charged with Criminal Conspiracy and Solicitation to Commit First Degree Murder and Criminal Use of a Communication Facility.[1] In order to secure his release from prison, Crampton also became a police informant.

> [1] Defense counsel's motion states that [Appellant] was incarcerated from June 11, 2014 until his release on nominal bail on March 16, 2015. Def.'s Post-Sentence Motion, ¶ 2.

Lastly, [Appellant] was charged on or about July 14, 2014 with Conspiring or Soliciting two other York County Prison inmates, Edward Luttrell and Deonsae Bryant, to kill Crampton. The charges involving the plots against Jones and Crampton as victims were joined at the preliminary hearing on July 25, 2015, under one OTN, which became docketed at CP-67-CR-4812-2014.

On October 15, 2014, the Commonwealth filed a motion requesting consolidation of [Appellant's] cases, 2961-2014 and 4812-2014.[2] [Appellant] opposed consolidation of the cases and also requested that the [c]ourt sever the Jones (victim) Solicitation charge from the Crampton (victim) Solicitation charge that were previously joined at the preliminary hearing in case 4812-2014. On October 30, 2014, the Honorable Thomas H. Kelley, VI denied the Commonwealth's motion to consolidate cases 2961-2014 and 4812-2014, but left all charges in 4812-2014 consolidated.[3] [Appellant's] jury trial in case 2961-2014 began on May 18, 2015 and concluded on May 27, 2015. The jury found [Appellant] not guilty on the two counts charged, Soliciting the Murder of Chris Ward and Criminal Use of a Communication Facility.

> [2] The Motion also requested consolidation of the cases against the Defendant's Co-Defendants, Toby Hess, docketed at CP-67-CR-4621-2014, CP-67-CR-4625-2014; and [Deonsae] Bryant, docketed at CP-67-CR -4740-2014.

- 2 -

[3] The undersigned was reassigned this case in or about October 2015 after Judge Kelley's departure from the bench and Judge Trebilcock's activation in the United States Army.

[Appellant's] jury trial in the instan[t] case, 4812-2015, began on November 9, 2015 and concluded on November 20, 2015. [Appellant] was found guilty on Count 2: Criminal Conspiracy to Commit First Degree Murder of Michael Crampton,[4] Count 3: Criminal Use of a Communication Facility,[5] and Count 4: Criminal Solicitation to Commit First Degree Murder of Calvin Jones.[6] [Appellant] was sentenced on December 31, 2015 to an aggregate term of 12-24 years in state corrections. [Appellant's] Post-Sentence Motion, filed on January 11, 2016, then follows.

[4] 18 Pa.C.S.§ 903(a)(1), § 2505(a).

[5] 18 Pa.C.S. § 7512(a).

[6] 18 Pa.C.S. § 902(a), § 2502(a).

Order Denying Post-Sentence Motion, 2/17/16, at 1-3. The trial court denied Appellant's post-sentence motion. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT GRANTED THE COMMONWEALTH[']S REQUEST TO KEEP THE OTN CASES CONSOLIDATED?

2. WHETHER THE EVIDENCE WAS INSUFFICIENT TO FIND THE APPELLANT GUILTY OF THE OFFENSES OF: CRIMINAL CONSPIRACY TO COMMIT MURDER; CRIMINAL USE OF COMMUNICATION FACILITY; AND CRIMINAL SOLICITATION TO COMMIT FIRST DEGREE MURDER?

3. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

4. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE APPELLANT CONSECUTIVELY?

Appellant's Brief at 6 (capitalization in original).

Appellant first argues that the trial court abused its discretion in refusing to sever the two cases. Appellant's Brief at 20-30. Appellant claims the evidence presented in the cases was confusing and difficult for the jury to separate. *Id*. at 24. He also contends that the jury relied upon evidence in one case to infer Appellant's guilt in the other case. *Id*. Ultimately, Appellant contends that he was prejudiced by trying the cases together. *Id*.

Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant. ***Commonwealth v. Wholaver***, 989 A.2d 883, 898 (Pa. 2010). Consolidation and severance of criminal matters are governed by Pennsylvania Rules of Criminal Procedure 582 and 583, which provide in relevant part as follows:

**RULE 582. JOINDER--TRIAL OF SEPARATE INDICTMENTS OR INFORMATIONS**

(A)   Standards

(1)   Offenses charged in separate indictments or informations may be tried together if:

(a)   the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b)   the offenses charged are based on the same act or transaction.

- 4 -

* * *

**RULE 583.  SEVERANCE OF OFFENSES OR DEFENDANTS**

The court may order separate trials of offenses . . . if it appears that any party may be prejudiced by offenses . . . being tried together.

Pa.R.Crim.P. 582, 583.

In ***Commonwealth v. Burton***, 770 A.2d 771 (Pa. Super. 2001), this Court summarized the appropriate tests to be applied under these rules as follows:

> Pursuant to these rules, we must determine:
>
> > "[1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be unduly prejudiced by the consolidation of the offenses."
>
> [***Commonwealth v.*** ]***Boyle***, 733 A.2d [633,] at 635 [(Pa. Super. 1999)] (quoting ***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997)) [(quoting ***Commonwealth v. Lark***, 543 A.2d 491, 496-497 (Pa. 1988))].  In deciding whether the evidence of each offense would be admissible in a separate trial, we must keep in mind that
>
> > "evidence of distinct crimes are [sic] not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts.  However, evidence of other crimes . . . may be admissible . . . where the evidence is relevant for some other legitimate purpose . . . ."
>
> ***Id***. at 636 (citations omitted).  Legitimate purposes include:
>
> > "(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design

- 5 -

embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other."

*Id*. (quoting ***Commonwealth v. Buchanan***, 689 A.2d 930, 932 (Pa. Super. 1997)).

***Burton***, 770 A.2d at 778. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts. ***Collins***, 703 A.2d at 422-423. Our Supreme Court has further instructed that consolidation of indictments requires only that there are shared similarities in the details of each crime. ***Commonwealth v. Newman***, 598 A.2d 275, 278 (Pa. 1991). Moreover, in ***Lark***, our Supreme Court explained the following:

Another "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

***Lark***, 543 A.2d at 497 (citations omitted).

Our review of the record supports the trial court's determination to deny Appellant's request to sever the charges. The evidence established that Crampton met Appellant in April of 2014, when they were both in York

County Prison. N.T., 11/12-13/15, at 510. While in prison, Appellant offered Crampton, who was expecting to be released soon, $10,000.00 and then $15,000.00 to kill Jones. *Id*. at 512-515. Crampton understood that the purpose for killing Jones was to prevent Jones from testifying against Appellant. *Id*. at 513. Appellant attempted to provide Crampton with various telephone numbers as well as information regarding Jones's residence, Jones's place of employment, and photographs of Jones that had been taken surreptitiously at a court proceeding. *Id*. at 520-522. On June 4, 2014, when Crampton was not released from prison as he had expected, Crampton sent a letter to the York County District Attorney offering to provide evidence against Appellant. *Id*. at 536-537. After meeting with members of the District Attorney's office, Crampton's charges were then dismissed and he was released from prison. *Id*. at 536-537. Subsequently, on June 10, 2014, Crampton met with Appellant outside of prison to discuss the terms of payment for Crampton to kill Jones. *Id*. at 546-551. Appellant subsequently was arrested, and Crampton was informed that he was also the target of a killing. *Id*. at 553-554.

The record further establishes that, after Appellant's bail was revoked and he returned to York County Prison, he became reacquainted with Luttrell, a fellow inmate. N.T., 11/12-13/15, at 674-679. Once the two men became friendly, Appellant began telling Luttrell that Appellant hated Crampton because Crampton had set-up Appellant, and Appellant wanted

Crampton to be killed before Appellant's preliminary hearing. *Id*. at 688-690. As Appellant became more anxious, Luttrell suggested that fellow inmate Bryant, who was due to be released, could shoot Crampton. *Id*. at 691-692. At the behest of Appellant, Luttrell then approached Bryant to shoot Crampton. *Id*. at 692-695. Bryant agreed that he would shoot Crampton in the head. N.T., 11/16-17/15, at 863. In fact, Bryant testified to the details of a conversation between himself, Appellant, and Luttrell regarding the details of the shooting of Crampton, which would prevent Crampton from appearing at Appellant's preliminary hearing. *Id*. at 874-876.

The facts establish that the two episodes, *i.e.*, the hiring of Crampton to kill Jones and the hiring of Bryant to kill Crampton, occurred a short time apart. In the first episode, Appellant solicited Crampton to kill Jones to prevent Jones from testifying against Appellant. In the second episode, Appellant solicited Bryant, via Luttrell, to kill Crampton to prevent Crampton from testifying against Appellant. Therefore, we agree with the trial court that, although the intended victims of the two incidents were different, the evidence of each set of offenses would be admissible in a separate trial for the other under the theory that the evidence of each case was necessary in the other to enable the Commonwealth to present a cohesive narrative to the jury, *i.e.*, to tell the "complete story."

Moreover, Appellant has not presented a viable argument that the jury was incapable of separating the crimes to avoid confusion. Our Supreme Court has held that "where a trial concerns distinct criminal offenses that are distinguishable in time, space, and the characters involved, a jury is capable of separating the evidence." *Collins*, 703 A.2d at 423. Appellant has failed to prove that the jury was not capable of separating evidence of the respective crimes to avoid confusion. Indeed, the record establishes that the jury found Appellant not guilty of criminal solicitation of the first-degree murder of Crampton. Consequently, there is no indication that Appellant was prejudiced by the consolidation of the offenses. Hence, Appellant has failed to establish the trial court abused its discretion in refusing to sever the charges.

Appellant next argues that there was insufficient evidence to support his convictions. Appellant's Brief at 30-44. Specifically, Appellant contends that the evidence was insufficient to find him guilty of criminal conspiracy to commit murder of the first degree of Crampton. *Id*. at 30-34. Also, Appellant claims that the evidence was insufficient to convict him of criminal use of communication facility. *Id*. at 34-37. Lastly, Appellant alleges the evidence was insufficient to convict him of criminal solicitation to commit first-degree murder of Jones. *Id*. at 37-44.

As a preliminary matter, "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a

Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. [As a general rule, a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). "If [an appellant] wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009). *See also Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in Rule 1925(b) Statement the elements of particular crime not proven by the Commonwealth).

Appellant's Rule 1925(b) statement asserts, "The [e]vidence was insufficient for the jury to find [Appellant] guilty of all the [o]ffenses." Appellant's Rule 1925(b) Statement, 3/28/16, at 1. Appellant's non-specific claim challenging the sufficiency of the evidence fails to specify which elements of which crimes were allegedly not proven by the Commonwealth. Consequently, Appellant waived this claim on appeal. *Castillo*; *Lord*; *Manley*.

Furthermore, even if he had properly preserved the issue for appeal, Appellant would not be entitled to relief. We observe that we analyze

arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting ***Commonwealth v. Emler***, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

The trial court addressed the general sufficiency of the evidence to support each of Appellant's convictions. In disposing of Appellant's post-sentence motion, the trial court offered the following extensive discussion pertaining to Appellant's claim that the Commonwealth presented insufficient evidence to convict him of criminal solicitation to commit the first degree murder of Calvin Jones, at Count 4:

> We find there was sufficient evidence for the jury to find [Appellant] guilty of this offense. The Criminal Solicitation statute reads:

- 11 -

> A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

[18 Pa.C.S. § 902.]

Crampton testified that he met [Appellant] in April 2014, when both were incarcerated in York County Prison. Crampton was in prison on pending drug charges and a state parole detainer. Crampton testified that he and [Appellant] had multiple conversations involving Jones's killing. The conversations began when Crampton and [Appellant] were in the prison's pre-class section and [Appellant] requested that Crampton kill Jones to prevent Jones from testifying against [Appellant] in case 2961-2014. At the time, Jones was scheduled to testify against [Appellant] at a preliminary hearing on May 9, 2014. Crampton testified that [Appellant] initially offered him $10,000.00 to commit the killing, but later agreed to pay $15,000.00, in two installments of $7,500.00.

[Appellant] gave Crampton information about Jones on two pieces of paper while in prison. On one piece, [Appellant] wrote his son, Toby Hess's name and phone number, [Appellant's] own name, inmate number, and phone number, and wrote "Calvin Curtis Jr. Labron (snitch) Harris St HBG." On the second piece of paper, [Appellant] wrote directions to Jones's job in Harrisburg. Crampton testified that [Appellant] asked him to contact his son, Toby after Crampton was released from prison. Crampton testified that he believed he would soon be released from prison, and advised [Appellant] of this belief.

Crampton had a preliminary hearing scheduled on May 28, 2014, however, he was not released as he had hoped due to a state parole detainer issue. Because Crampton was not released, he wrote to the York County District Attorney's Office on June 3, 2014 that [Appellant] had requested he "take out" Jones. On June 9, 2014, Crampton was interviewed by the DA's office, released from prison, and placed a recorded call to [Appellant] while working with authorities.

- 12 -

Additionally, Crampton contacted [Appellant] the next day to set up an in-person meeting. Crampton did not tell police about this meeting because he hoped to secretly receive the full $15,000.00 in advance of killing Jones, while still cooperating with authorities to get consideration on his pending drug charges. When Crampton met with [Appellant] on approximately June 11, 2014, Crampton assured [Appellant] that he could handle the job. Although Crampton now requested the money upfront, there was no money exchanged during the in-person meeting. [Appellant] was arrested shortly after this meeting and no one was killed.

[Appellant] rigorously attacked Crampton's credibility. [Appellant] painted Crampton out as opportunistic for withholding information about the solicitation until he could secure his own release from prison in June 2014. The defense presented multiple witnesses, including: Crampton's cousin who testified that he had not seen Crampton when he met with [Appellant] in-person as Crampton had testified; Crampton's cellmate, who testified he had not heard the Crampton-[Appellant] conversations; and Mitchel Perez, a witness whose testimony included that Crampton stated he was "setting up some white boy," which was [Appellant].

[Appellant] took the stand and acknowledged talking to Crampton while in prison but denied requesting that Crampton kill Jones. [Appellant] testified that he gave Crampton his and Toby's phone numbers as Crampton repeatedly asked [Appellant] for a job. Several of the witnesses who were prison inmates testified that [Appellant] had a reputation for being a wealthy and successful businessman. [Appellant] testified that his in-person meeting with Crampton was for the purpose of bringing Crampton a job application.

[Appellant] also testified as to why he wrote down Jones's address for Crampton. Crampton advised [Appellant] that he was a drug dealer and that he hated snitches. [Appellant] testified that he gave Crampton Jones's address so that Crampton could avoid selling drugs to Jones, a snitch.

Along with Crampton's testimony, the Commonwealth presented testimony from [Appellant's] son, Toby Hess. Toby testified that [Appellant] called him from prison to request that Toby attend [Appellant's] preliminary hearing on May 9, 2014,

and take photos of Calvin Jones. As the phone call was made by [Appellant] in prison, it was recorded and played for the jury. Toby testified that following the preliminary hearing, [Appellant] called him again from prison to confirm the photos were taken and requested that Toby keep the photos on his phone.

Toby also testified that he obtained a prepaid phone with a Maryland phone number for [Appellant] and programmed Crampton's phone number in it. Toby texted Crampton the Maryland phone number on about June 10, 2014. [Appellant] disputed that the prepaid phone was set up to contact Crampton, and argued that [Appellant's] attorney had directed [Appellant] to obtain a prepaid phone for a lawful purpose of keeping in communication.

After reviewing the evidence and drawing all reasonable inferences in a light most favorable to the Commonwealth, there was sufficient evidence to convict [Appellant] of this offense. The Commonwealth presented evidence to which a jury could find that [Appellant] deliberately intended to have Jones killed in order to prevent Jones from testifying against him in the related case, and requested that Crampton [carry] out the task. Crampton testified that he informed [Appellant] that he could handle that task during their in-person meeting. The jury was free to believe Crampton's testimony, and find [Appellant's] rendition of the facts less believable. Indeed, this trial required extensive weighing of witness credibility. In the end, the jury did not find [Appellant's] explanation of the evidence credible, and the Court will not disturb that determination.

Order Denying Post-Sentence Motion, 2/17/16, at 4-8 (footnotes omitted).

With regard to Appellant's claim that the Commonwealth failed to present sufficient evidence to support his convictions of criminal conspiracy to commit the first-degree murder of Crampton at Count 2, and criminal use of a communication facility at Count 3, the trial court offered the following analysis in its opinion pursuant to Pa.R.A.P. 1925(a):

- 14 -

In Count 2, Appellant was convicted of Criminal Conspiracy to Commit the First Degree Murder of Michael Crampton. To be convicted of criminal conspiracy, the jury must find that:

(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another ... to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime.[4]

[4] *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (internal citations and quotations omitted).

When viewed in the light most favorable to the Commonwealth as the verdict winner, we find there was sufficient evidence to convict Appellant of these remaining charges. The Commonwealth presented evidence that showed Appellant met two of his co-conspirators, [Luttrell] and [Bryant] while all were incarcerated in the York County Prison. Appellant stated to Luttrell his desire that Crampton be killed prior to Crampton testifying against Appellant at his preliminary hearing. Luttrell decided that Bryant would be a good candidate to complete the killing. Luttrell approached Bryant in York County Prison about killing Crampton, and explained that in exchange, Appellant would provide Bryant a job and a truck after Bryant's release. Bryant testified that he liked the offer as he wanted to financially support his family with the job. Bryant agreed and testified that he intended on shooting Crampton in the head. Bryant also testified that the plan included preliminary arrangements for someone to provide him with money to purchase a gun to complete the murder.

Bryant told Luttrell that he would be released from prison soon, although his release did not occur. Luttrell testified that all communication between Appellant and Bryant went through him. Bryant testified that on one occasion the three men were together in the Prison yard to discuss the murder, but generally Luttrell was Appellant's "mouthpiece" between Bryant and Appellant.

In order to develop a trust among the co-conspirators, they arranged a money transfer to Bryant's girlfriend, Sandel.

Bryant testified that the trust deposit was to prove to Appellant that he could be trusted not to talk to the police. To begin the transfer, Appellant needed to get a hold of his son, Toby, to obtain the agreed upon cash, $500. Luttrell [arranged] for Appellant to use another prison inmate's unique phone PIN in an attempt to evade detection. Luttrell also gave Appellant Sandel's contact information, which came from Bryant.

Appellant called Toby using the inmate's PIN and arranged for Toby to take the $500 cash to Sandel, who was not incarcerated. Toby drove to Sandel's residence and conveyed the $500 to her. Sandel then took a portion of that money and put it on Luttrell's prison account, thereby completing their intended trust deposit. Luttrell testified that he received a cut of the money for working as the middleman in the transfer. The Commonwealth argued that this money transfer was an overt act in furtherance of the conspiracy.

Fortunately, the conspiracy did not lead to Crampton's murder. Luttrell decided to advance his own efforts to get out of prison and into the York County Drug Court program by writing to the York County District Attorney's Office and disclosing the plot to kill Crampton. Appellant, Bryant, and Toby Hess were charged with the conspiracy. Bryant was not released from prison. Crampton testified that he instead went on the run after he received verbal death threats at his home.

Giving the Commonwealth all reasonable inferences, the jury could have found beyond a reasonable doubt that Appellant intended to kill Crampton to prevent him from testifying against Appellant; that Appellant entered into an agreement with others to commit the killing; and found that the trust deposit was an act in furtherance of this conspiracy.

Appellant was also found guilty in Count 3 of Criminal Use of a Communication Facility. Pursuant to 18 Pa.C.S. § 7512(a), a person commits this offense, a felony three, if the person "uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title." The definition of a "communication facility" includes a telephone.[5]

_____

[5] 18 Pa.C.S. § 7512(c).

- 16 -

The Commonwealth presented evidence that Appellant, while incarcerated in the York County Prison, used the prison's phone to call his son, Toby. Using the prison's phone, Appellant requested that Toby take photographs of [Jones] while Toby attended Appellant's preliminary hearing. The Commonwealth introduced two pertinent recorded phone conversations between Appellant and Toby. On the first recorded call, Appellant requested that Toby [attend] the preliminary hearing and take photos of Jones. On the second recorded call, Appellant called Toby again from prison to confirm that Toby took the photos at the preliminary hearing, and requested that Toby retain the photos in his cell phone.

When viewed with all the evidence presented at trial, the phone conversations linked Appellant with using Toby and Crampton to aid his plot to kill Jones. We find that the Commonwealth presented sufficient evidence to convict Appellant of this offense as Appellant used the prison's phone to facilitate or further the commission of a felony, *i.e.*, the solicitation of [Jones'] murder. Further, as described above, there was evidence that Appellant used the prison's phone to contact Toby in relation to the conspiracy to kill [Crampton]. Accordingly, the jury verdict should stand.

Trial Court Opinion, 5/6/16, at 3-7.

Thus, the evidence at trial was sufficient to show Appellant was guilty of the crimes of criminal solicitation to commit the first-degree murder of Jones, criminal conspiracy to commit the first-degree murder of Crampton, and criminal use of a communication facility. Therefore, we conclude Appellant's challenge to the sufficiency of the evidence would merit no relief even if it had been properly preserved.

In his third issue, Appellant argues that the verdict was against the weight of the evidence. Appellant's Brief at 44-49. Essentially, Appellant contends that the Commonwealth's witnesses lacked credibility because they

had convictions for *crimen falsi*, and that they lied in order to benefit themselves in the form of reduced sentences, participation in treatment, and dismissal of charges.

In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751-[7]52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 A.2d at 319-[3]20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the

weight of the evidence. ***Commonwealth v. Farquharson***, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Widmer***, 560 Pa. at 321-[3]22, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Widmer***, 560 A.2d at 322, 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.***, 533 Pa. 441, 447, 625 A.2d 1181, 1184-[11]85 (1993)).

***Clay***, 64 A.3d at 1054-1055. "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-880 (Pa. 2008).

The trial court aptly addressed this issue challenging the weight of the evidence in its order denying Appellant's post-sentence motions as follows:

- 19 -

The [c]ourt finds this argument [challenging the weight of the evidence to be] unpersuasive. The jury heard the attacks on the Commonwealth's witnesses's credibility and bias. This evidence had to be weighed against [Appellant's] and defense witnesses's credibility as well. There were multiple occasions where [Appellant's] testimony conflicted with the Commonwealth's witnesses during the approximately two-week trial. After weighing the substantial amount of witness testimony and evidence, the jury found [Appellant] guilty on Counts 2 through 4. We decline to grant a new trial as the [c]ourt will not reassess the jury's determination of credibility or find that "certain facts are so clearly of greater weight" that to ignore or give them equal weight would deny justice.[22] The verdict did not shock the conscience or was against the weight of the evidence, so the [c]ourt will not grant relief.

[22] *Widmer*, 744 A.2d at 752.

Order Denying Post-Sentence Motion, 2/17/16, at 10.

Based upon our complete review of the record, we are compelled to agree with the trial court. Here, the jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant. The jury weighed the evidence and concluded Appellant perpetrated the three crimes in question. We agree that this determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Appellant last argues that the trial court abused its discretion in fashioning his sentence. Appellant's Brief at 49-52. Basically, Appellant

presents several claims that he believes support his contention that he should not have received consecutive sentences.

We note that our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Moury*, 992 A.2d at 170 (citing *Commonwealth v. Mann*, 820 A.2d 788 (Pa. Super. 2003)). In *Commonwealth v. Reeves*, 778 A.2d 691 (Pa. Super. 2001), we reaffirmed the principle articulated in *Commonwealth v. Jarvis*, 663 A.2d 790 (Pa. Super. 1995), wherein this Court observed that, although Pa.R.Crim.P. 1410 (presently Rule 720) characterizes post-sentence motions as optional, the rule expressly provides that only issues raised in the trial court will be deemed preserved for appellate review. *Reeves*, 778 A.2d at 692. Applying this principle, the *Reeves* Court held that an objection to a discretionary aspect of a sentence is waived if not raised in a post-sentence motion or during the sentencing proceedings. *Id*. at 692-693. *See also Commonwealth v. Parker*, 847 A.2d 745 (Pa. Super. 2004) (holding challenge to discretionary aspect of sentence was waived because appellant did not object at sentencing hearing or file post-sentence motion); *Commonwealth v. Petaccio*, 764 A.2d 582 (Pa. Super. 2000) (same).

Further, we are mindful that a failure to include the Pa.R.A.P. 2119(f) statement does not automatically waive an appellant's discretionary aspects of sentencing argument. *Commonwealth v. Roser*, 914 A.2d 447, 457

(Pa. Super. 2006). However, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement. *Id*. (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006)). *See also Commonwealth v. Farmer*, 758 A.2d 173, 182 (Pa. Super. 2000) (observing that we may not reach the merits of discretionary aspects of sentencing claims where the Commonwealth has objected to the omission of a Pa.R.A.P. 2119(f) statement and finding the issue to be waived). *Cf. Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002) (holding that if the appellant fails to comply with Pa.R.A.P 2119(f), Superior Court may entertain a discretionary sentencing claim if Commonwealth does not object to the appellant's failure to comply with Pa.R.A.P. 2119(f)).

Herein, the first requirement of the four-part test is met because Appellant timely brought this appeal following the denial of his post-sentence motion. However, our review of the record reflects that Appellant did not meet the second requirement because he did not include a challenge to the discretionary aspects of his sentence in his post-sentence motion or at the time of sentencing. Post-Sentence Motion, 1/11/16 (Record Entry #50). Likewise, the third requirement is not met. Specifically, Appellant failed to include in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). The Commonwealth is aware of the defect in Appellant's brief and has

objected to this omission by Appellant. Commonwealth's Brief at 44-45. Therefore, Appellant's issue is waived, and we are precluded from addressing the merits of his claim on appeal. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/17/2017